401 A.2d 1160

**Delores HEFFNER, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued June 16, 1978.

Decided April 12, 1979.

---

**13.** See also lower court's opinion at pp. 16–17.

Ira Silverstein, Philadelphia, for appellant.

James M. Marsh, Philadelphia, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

CERCONE, President Judge:

The instant appeal arises from the lower court's granting a motion for summary judgment in favor of the defendant Allstate Insurance Company. In granting the motion the lower court determined that Mrs. Heffner, whose husband was fatally injured when the automobile he was driving flipped over and collided with a utility pole, was entitled to recover from Allstate *only the survivor's* loss benefit of $5,000 and the funeral expense benefits provided according to Pennsylvania's No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. (Supp. 1978). Mrs. Heffner contended that she was additionally entitled to receive the work loss benefits her husband indisputably would have received had he been permanently injured, rather than killed, in the accident. Having thoroughly considered both sides of this

novel argument,[1] we conclude that the lower court's decision was in error. Consequently, we will reverse and remand for further proceedings consistent with this opinion.

At the outset we caution anyone who embarks on the high seas of Pennsylvania's No-Fault Motor Vehicle Insurance Act not to do so without a good compass, a knowledge of reefs and storms and plenty of food and water. Any attempt to choose an alternate route by land in an effort to unlock the secrets of the Act will encounter mazes of paths, pitfalls, underbrush and dead ends. In attempting to explain what should be the rudimentary "work loss" compensatory scheme, no less an experienced guide than the Pennsylvania Bar Institute was forced to conclude that the Act is impenetrable. In its book, Pennsylvania No-Fault Motor Vehicle Insurance Act—Practice Under the Act (Pub. # 61, 1975), PBI unequivocally asserts:

> "It is not possible to determine with any degree of certainty the amount of work loss benefits required to be paid under the act. . . . The act is essentially incapable of execution since there are at least four possible interpretations of how 'basic loss benefits' for 'work loss' are calculated. None of the interpretations properly use all of the act and the provisions are apparently totally irreconcilable." *Id.* at 22.

With these difficulties in mind, we turn to the resolution of the instant controversy.

In essence, appellant's argument is a simple syllogism: The No-Fault Motor Vehicle Insurance Act provides that survivors of deceased victims are entitled to receive basic loss benefits;[2] "Work loss" is adumbrated under the Act as a particular kind of basic loss;[3] Therefore, as a survivor of a deceased victim, Mrs. Heffner contends she is entitled to receive work loss benefits. Mrs. Heffner argues this conclu-

1. In their briefs both parties concede, as the lower court did in its opinion, that there is no case law from this or any other jurisdiction to guide us in reaching our decision.

2. 40 P.S. § 1009.201(a) (Supp. 1978).

3. 40 P.S. § 1009.202(b) (Supp. 1978).

sion is fortified by the preamble to the Act which declares that "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents . . . is essential to the humane and purposeful functioning of commerce . . . ."[4] Thus, Mrs. Heffner urges us to construe liberally the No-Fault Motor Vehicle Insurance Act to achieve its broad, remedial purposes[5] and conclude that work loss benefits are available to survivors of deceased victims of motor vehicle accidents.

Allstate maintains, and the hearing court below agreed, that the scheme of the Act, insofar as is relevant to the instant litigation, was to devise two separate classes of accident victims. On the one hand, had Mr. Heffner survived the accident he would have been entitled to particular basic loss benefits including: professional medical treatment and care, emergency health services, and medical and vocational rehabilitation services;[6] work loss benefits;[7] as well as replacement services loss.[8] However, Allstate argues, because Mr. Heffner died immediately as a result of the accident, appellant was only entitled to recover survivor's loss[9] and funeral expenses.[10] Allstate supports its position by referring us to two features of the Act. First, Section 103 differentiates between victims and deceased victims; the former "means an individual who suffers injury arising out of the maintenance or use of [an automobile]," while the latter "means a victim suffering death resulting from injury." Thus, Allstate contends that there was no reason for creating a "victim-deceased victim" dichotomy unless the

4. 40 P.S. § 1009.102(a)(3) (Supp. 1978).

5. The Statutory Construction Act, 1 Pa.C.S. § 1928(c) (Supp. 1978).

6. 40 P.S. §§ 1009.202(a) & 1009.103 (Supp. 1978).

7. 40 P.S. §§ 1009.202(b), 1009.103, 1009.205–206 (Supp. 1978).

8. 40 P.S. §§ 1009.202(c) & 1009.103 (Supp. 1978).

9. 40 P.S. §§ 1009.202(d) & 1009.103 (Supp. 1978).

10. 40 P.S. §§ 1009.202(a) & 1009.103.

legislature intended to differentiate benefits for surviving victims and survivors of deceased victims. Second, Allstate contends, appellant's argument requires this court to construe the Act to provide overlapping coverage, a kind of double recovery. For example, since work loss is generally defined in part as the gross income of the victim, it includes so much of a victim's income as he would have naturally contributed to support his dependents, in this case Mrs. Heffner. However, survivor's loss is designed to estimate the amount of this contribution and provide it to Mrs. Heffner as a survivor's loss benefit under the Act. Thus, if Mrs. Heffner is entitled to recover both survivor's loss and work loss, she is, in effect, recovering twice the amount of money Mr. Heffner would have contributed to her support. Furthermore, Allstate points out, if Section 201 of the Act is to be read so that the survivor of a deceased victim is to receive *all* basic loss benefits, the position which Mrs. Heffner espouses herein,[11] she will receive a double recovery for "Replacement services loss" when Sections 202(c)–(d) and 103 are read together. Allstate concludes that the statutory scheme of reparations will be thrown into disarray if the Act may be read to provide benefits in excess of the economic losses which survivors of deceased victims actually sustain as the result of an accident. This, Allstate submits, contradicts the clear legislative intent to compute with as much precision as possible the precise monetary costs of a motor vehicle accident as exemplified by the net loss provisions of the Act.[12] See The Statutory Construction Act, 1 Pa.C.S. § 1921 (Supp. 1978).

Of course, recalling the sentiment with which we began our discussion of the No-Fault Motor Vehicle Insurance Act, it is not surprising to learn that Allstate's argument is

11. 40 P.S. § 1009.201(a) provides: "If an accident resulting in injury occurs in this Commonwealth, any victim or *any survivor of a deceased victim* is entitled to receive basic loss benefits in accordance with the provisions of this act." [Emphasis added.]

12. 40 P.S. § 1009.206 (Supp. 1978).

cogent so long as one ignores contrary signs of guidance in the Act. For example, as we stated above, in its preamble the Act exclaims its purpose to be, *inter alia*, "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways . . . ." [13] Historically, the courts of this Commonwealth have routinely followed this spirit and found coverage for the insured in close or doubtful insurance cases.[14] The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured.[15] Obviously, to adopt Allstate's interpretation of the Act in the instant case is to give less than generous application to that principle. In addition, although Allstate directed our attention to the definitional dichotomy of "victim-deceased victim" which the Act creates, it has overlooked the impact of the Act's definition of "injury." Section 103 provides: " 'Injury' means accidentally sustained bodily harm to an individual and that individual's illness, disease, or *death* resulting therefrom." [Emphasis added.] Because the Act specifically defines the term "injury," for the purposes of construing the Act, "injury" is a term of art to which we should ascribe precisely the meaning the Act gives it.[16] As one might expect when he analyzes the No-Fault Act, this interpretational truism creates another paradox, a nettlesome impediment for Allstate's position. True, the Act has differentiated victims from deceased victims, but it has not differentiated injuries from fatal inju-

13. 40 P.S. § 1009.102(a)(3) (Supp. 1978).

14. See, e. g., *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 76 n. 8, 371 A.2d 193 n. 8 (1977); *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112 (1968); *Nationwide Mut. Ins. Co. v. Ealy*, 221 Pa.Super. 138, 289 A.2d 113 (1972).

15. See The Statutory Construction Act, 1 Pa.C.S. § 1928(c) (Supp. 1978).

16. See PBI, Pennsylvania No-Fault Motor Vehicle Insurance Act—Practice Under the Act 8 (Pub. # 61, 1975).

ries.[17] The result is that some sections of the Act which Allstate insists apply only to non-fatal injuries are not so limited by their terms. For example, Section 103 of the Act defines "Loss" as the "accrued economic detriment resulting from *injury . . . consisting of*, and limited to, allowable expense, *work loss*, replacement services loss, *and survivor's loss*." [Emphasis added.] Since injury means death, as well as non-fatal injury, Section 103 can be read to mean that work loss is an accrued economic detriment resulting from death.[18] This implication is fortified by Section 206 of the Act which, in attempting to define "net loss," provides that life insurance proceeds are not to be subtracted from loss in calculating the net loss available to an individual because of injury. Certainly, if the legislature intended to establish benefits for two different classes of individuals, "victims" and "deceased victims" it did not do so in very lucid fashion. Indeed, Mrs. Heffner points out that if the legislature had intended to deny work loss benefits to the survivors of deceased victims, it could have done so clearly as have numerous other jurisdictions which have enacted no-fault legislation.[19]

Thus, the Act leaves us in a quandary. To adopt appellant's argument is to create the likelihood of overlapping or double recoveries for survivors of deceased victims, as well as to compensate them for expenses which were not incurred (e. g., support for a victim who did not survive an accident). On the other hand, to accept Allstate's argument is to ignore countervailing, albeit equivocal, indications that the Act permits such recoveries, and to sublimate the long-standing principle that insurance contracts, as well as remedial legis-

17. The term fatal injury is used once in the Act, in connection with "Survivor's loss" in Section 103. However, it is not otherwise defined.

18. Cf. 40 P.S. § 1009.205(a) (Supp. 1978).

19. See, e. g., Colo.Rev.Stat. § 10–4–706(1)(d)(II) (1974); Conn.Rev. Stat. § 38–319(b)(2)(ii) (1977); Mich.Comp.L.Ann. § 500.3107(b) (Supp. 1978); Nev.Rev.Stat. § 698.070(5) (1977); N.J.Stat.Ann. § 39:6A–4(b) (1973); N.Y. Insurance Law § 671(c) (McKinney Supp. 1978); N.D.Cent.Code § 26–41–03(21) (1978).

lation relating thereto, should be construed liberally in favor of the insured. Bad law makes hard cases. However, looking outside the provisions of the Act itself, we conclude there is one remaining argument which compels us to agree that the court below erred and that appellant is entitled to recover work loss benefits as the survivor of a deceased victim.

One of the purposes of the No-Fault Motor Vehicle Insurance Act, if not its *raison d'etre*, is the partial abolition of the tort system, and its concomitant negligence standards, for determining compensation due to individuals injured in motor vehicle accidents on the highways of this Commonwealth.[20] Of course, the system devised by the Act is supposed to be low-cost, comprehensive and fair.[21] In order to provide a plan that was both low-cost and comprehensive, however, it was necessary to retain the tort system to compensate persons who were very seriously injured or killed.[22] Thus, Section 301 of the Act formally abolishes tort liability for accidents falling within the purview of the Act, except for those circumstances which are specifically delineated in Section 301. Appellant claims that if Allstate's interpretation of the Act is accepted, the economic detriment aspect of survival actions under traditional tort principles is abolished with respect to accidents occurring within the terms of the Act, a consequence which would render Section 301, the very heart of the Act, contrary to the Constitution of this Commonwealth.[23]

In general terms, under Section 301 the system of tort liability is retained if, and only if: (1) The accident is caused by the operation of a vehicle which is not insured under the Act; (2) The accident was caused by a defect in design, manufacture, repair, service, or maintenance of the vehicle;

**20.** 40 P.S. § 1009.102(a)(5) (Supp. 1978).

**21.** 40 P.S. § 1009.102(a)(4)(6) (Supp. 1978).

**22.** *Id.*

**23.** On this point of law, The Pennsylvania Trial Lawyers Association has filed a brief as amicus curiae in support of appellant's position.

(3) The accident was intentional; (4) The accident causes loss which is not compensated because of the *limits* of coverage set forth in Section 202(a)–(d) of the Act; and, (5) The injury arises from the operation of a motorcycle and is not compensated pursuant to Section 103. In addition, under Section 301(a)(5), a person remains liable for damages for non-economic detriment (e. g., pain and suffering) if the accident results in (1) death or serious and permanent injury; (2) reasonably necessary medical and dental expenses in excess of $750; (3) physical or mental impairment which prevents the victim from carrying out his normal and material daily activities for a period of sixty days; or, (4) cosmetic disfigurement which is permanent, irreparable, and severe.

In Pennsylvania damages recoverable in survival actions include medical bills, the victim's conscious pain and suffering, and his probable lifetime earnings, less his probable lifetime costs of maintenance, discounted to their present value. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963); *Murray v. Philadelphia Transp. Co.*, 359 Pa. 69, 74, 58 A.2d 323 (1948). The proceeds of the action belong to the victim's estate and are disbursed to his heirs. *Frazier v. Oil Chemical Co.*, 407 Pa. 78, 179 A.2d 202 (1962); *Martin v. Swift*, 258 F.2d 797 (3d Cir. 1958). In a wrongful death action the damages include the present value of the services the victim would have rendered to his family had he lived, as well as his funeral expenses. *Swartz v. Smokowitz*, 400 Pa. 109, 161 A.2d 330 (1960); *Gaydos v. Domabyl*, 301 Pa. 523, 533–34, 152 A. 549 (1930). The persons entitled to recover such damages do not include the victim's estate generally, but the "husband, widow, children, or parents of the deceased, and no other relatives." [24]

Comparing the scheme for retaining the tort liability system under Section 301 of the No-Fault Motor Vehicle Insurance Act with damages traditionally recoverable in wrongful death and survival actions, a serious difficulty arises under Allstate's interpretation of the Act—it abolishes

24. The Act of April 26, 1855, P.L. 309, § 1, as amended, 12 P.S. § 1602 (1953).

the right of a deceased victim's estate to recover from a tortfeasor the earnings the deceased victim would have contributed to his estate had he survived.[25] This is so because Section 301 only retains traditional tort liability against third persons for lost earnings to the extent that they exceed the monetary limits established by Section 202(b) of the Act, i. e., work loss benefits up to $1,000 per month and $15,000 total. Therefore, in order to recover damages for lost earnings in a survival action against a tortfeasor, the decedent's estate must prove that the damages have exceeded the *limits* of its coverage under Section 202(b). Under Allstate's analysis no decedent's estate could ever prove this fact because the estate would never qualify for work loss benefits in the first place. The limits are never reached because the coverage is not afforded in any amount to survivors of deceased victims. Ergo, the net result is that the estate of a deceased victim can never recover monetary damages for lost earnings in a survival action.[26]

However, in Pennsylvania our Constitution, Article III, Section 18 provides that the General Assembly may not limit

**25.** The other elements of damages for wrongful death and survival appear to have been preserved. With respect to wrongful death actions, the present value of the victim's services to his dependents is recoverable by reading Sections 301(a)(4), 202(d) and 103 together, and funeral expenses are recoverable by reading Sections 301(a)(4), 202(a) and 103 together. Similarly, in survival actions, damages for pain and suffering are recoverable under Section 301(a)(5), and medical expenses may be recouped pursuant to Sections 301(a)(4), 202(a) and 103.

**26.** Allstate ostensibly regards this conclusion as the inevitable consequence of its interpretation of the Act, because its entire brief on the point is dedicated to the rather flimsy proposition that Mrs. Heffner does not have standing to raise this constitutional argument. The basis for this argument is that Mr. Heffner's estate has no cause of action whatever in survival against a tortfeasor. Mrs. Heffner's argument, however, is that she is entitled to recover work loss benefits under the Act, and therefore under the policy with Allstate, because Allstate's argument to the contrary in construing the Act is constitutionally infirm. This is a perfectly legitimate argument in support of her right to recover from Allstate under the insurance contract. See The Statutory Construction Act, 1 Pa.C.S. § 1922(3) (Supp. 1978).

"the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in the case of death from such injuries, the right of action shall survive. . . ." To be sure, in another context our Supreme Court found that the No-Fault Motor Vehicle Insurance Act did not violate a similar provision of our Constitution. In *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975), the Court construed that part of Article III, Section 18 of the Constitution, which reads: "The General Assembly may enact [workmen's compensation laws] but in no other cases shall the General Assembly limit *the amount to be recovered* . . for injuries to persons . . . ." [Emphasis added.] The Court concluded that nothing in that clause of Section 18 of the Constitution prohibited the abolition or modification of a *cause of action* for personal injuries, and that the effect of the threshold provisions of the No-Fault was the partial abolition of a cause of action for personal injuries, not the limitation of damages recoverable therefor. Thus, *Singer v. Sheppard* is distinguishable on several grounds. First, the language of Article III, Section 18 of the Constitution with which we are concerned herein is considerably broader than the clause the *Singer* Court construed. Indeed Section 18 may prohibit even the partial abolition of a cause of action for wrongful death or survival. Second, as footnote 25, supra, and the text accompanying it indicate, it cannot be said with equal confidence in this case that a cause of action has been abolished, indeed Section 301(a)(5) of the No-Fault Act specifically exempts fatal accidents from the general abolition clause of Section 301(a). If Allstate's argument were to prevail, it could only be concluded that the Act abolished only one aspect of damages in a survival action— economic loss.[27] And, third, even the Court in *Singer v. Sheppard* perceived that the General Assembly intended to preserve all aspects of recover for economic losses; the Court stated: "The No-fault Act, however, allows recovery for proven economic loss *without limitation*." *Id.*, 464 Pa. at

27. See R. Keeton & J. O'Connell, Basic Protection for the Traffic Victim 382, 444, 508 (1965). See also 7 Blashfield, Automobile Law & Practice §§ 275.56C & 275.4 (Supp. 1977).

396, 346 A.2d at 901. This statement would surely be erroneous if Allstate's interpretation of the Act were to prevail.

In any event, even if we were to conclude that the General Assembly could, consistent with our Constitution, abolish the recovery of damages for economic loss in a survival action, we could not conclude that the General Assembly so intended—at least not in the equivocal manner Allstate's argument suggests. Such a reading of the Act would certainly forsake its stated objectives of being fair, comprehensive, and achieving "the maximum feasible [28] restoration of all individuals injured *and compensation of the economic losses of the survivors* of all individuals killed" on our highways. Thus, in light of the untoward and, we are convinced, legislatively unintended consequences entailed in Allstate's argument in the instant case, we conclude that appellant is entitled to recover work loss benefits as the survivor of a deceased victim under the No-Fault Motor Vehicle Insurance Act and, consequently, under the contract of insurance with Allstate.

The order of the court below is reversed and the case is remanded for further proceedings to compute the amount of damages to which appellant is entitled.

VAN der VOORT, J., files a concurring opinion in which SPAETH, J., joins.

PRICE, J. notes his dissent.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

28. It should be noted that the unfeasibility of providing work loss benefits to the survivors of deceased victims is not patently apparent. Many of the proposed plans for no-fault motor vehicle insurance contemplate such coverage. See, e. g., note 27, supra. In fact, Georgia's legislation specifically entitled survivors of a deceased victim to recover work loss benefits. 17A Ga.Code Ann. § 56–3403b(b)(4) (1977).

194

VAN der VOORT, Judge, concurring:

I join the lead Opinion by President Judge CERCONE with the understanding on my part that we are not authorizing double recovery for the same items.