## Baigis v. Harleysville Mutual Insurance Company

*Glenn D. Hains,* for plaintiff.
*Victor S. Jaczun, William T. Renz,* and *Anthony J. Damiano,* for defendants.

KELTON, *J.,* April 18, 1980—In this case, which arises under section 204 of the Pennsylvania No-fault Motor Vehicle Insurance Act,* we have been asked to determine the liability for payment of basic loss benefits for a foster child in the legal custody of Bucks County's child welfare agency. The child received serious injuries from a collision between his bicycle and an automobile. In the trial without jury which was held before the undersigned, we determined that pursuant to Pa.R.C.P. 213(b) we should bifurcate the case and determine first the issues as to liability.

The relevant facts are not seriously in dispute. Pursuant to the Juvenile Act, 42 Pa.C.S.A. §6341(c) [formerly Act of December 6, 1972, P.L. 1464, 11 P.S. §50-320], on March 10, 1975 the Honorable William Hart Rufe, III, of this court, ordered that Edward Baigis, then a minor, be committed to the custody of the Bucks County Department of Child Welfare (now the Children and Youth Social Service Agency) for placement. That order provided as follows:

"After hearing, the Court finds juvenile Edward Baigis, to be deprived and now on this date, March 10, 1975, upon the recommendation of J. Russell Johnson, Social Worker, it is ordered and directed that Edward Baigis be placed in the legal custody of

*Act of July 19, 1974, P.L. 489, Art. I, sec. 101 et seq., 40 P.S. §§1009.102, .103 and .204.

the Bucks County Department of Child Welfare for placement."

The agency had previously removed Edward Baigis from his natural parents and had him placed in the home of Mr. and Mrs. Valentine Simonds pursuant to the agency's foster family care program. On October 10, 1975 while still a minor residing in the Simonds' household under the agency's program and operating his bicycle, he collided with a motor vehicle driven by Mrs. Helen Mowry, in Wrightstown Township, Bucks County, Pa. Minor plaintiff resided with the Simonds continuously from February, 1975 through the date of the accident.

Minor plaintiff has made demand for benefits upon Harleysville Mutual Insurance Company (hereinafter referred to as Harleysville) the automobile insurance carrier for the foster parents' household. When Harleysville denied coverage, plaintiff instituted suit in assumpsit against Harleysville seeking no-fault benefits under the policy of insurance issued by Harleysville to the foster parents. Subsequently, Harleysville joined as additional defendants Safeco Insurance Company of America (hereinafter referred to as Safeco), the automobile insurance carrier for Bucks County, and Nationwide Insurance Company (hereinafter referred to as Nationwide), the automobile insurance carrier for Mrs. Mowry's husband, alleging that either Nationwide or Safeco is liable for the no-fault benefits.

The issue presented to us for determination is which, if any, insurance company or companies is or are obligated to provide basic loss no-fault benefits for Edward's injuries. Because this issue requires us to interpret the somewhat ambiguous

language of the No-fault Act, we must look to the stated purposes of the act for assistance. The act's preamble declares that "the maximum feasible restoration of all individuals injured . . . in motor vehicle accidents on Commonwealth highways . . . is essential to the humane and purposeful functioning of commerce . . ." See section 102(a)(3) cited in Heffner v. Allstate Insurance Company, 265 Pa. Superior Ct. 181, 401 A. 2d 1160, 1161 (1979). Moreover, section 102(b) of the act states: "Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." Historically, the courts of this Commonwealth have routinely followed this spirit and found in favor of rather than against coverage in close or doubtful insurance cases. As stated by Judge Cercone in Heffner, the tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured. Thus, we will construe liberally the act to achieve its broad, remedial purposes. See the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(c), cited in Heffner, supra, 265 Pa. Superior Ct. at 181, 401 A. 2d at 1161-1163.

The categories and priorities among different insurance carriers where several sources of benefits may be available are set forth in section 204. That section provides in full as follows:

"(a) Applicable security.—*The security for the payment of basic loss benefits applicable to an injury to:*

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim; (2) *an insured is the security under which the victim or deceased victim is insured;* (3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle; (4) *an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident.* For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and (5) any other individual is the applicable assigned claims plan.

"(b) Multiple sources of equal property.—If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution pro rata from any other such obligor for the basic loss benefits paid and for the costs of processing the claim. If contribution is sought among obligors responsible under paragraph (4) of subsection (a) of this section proration shall be based on the number of involved motor vehicles." 1974, July 19, P.L. 489, No. 176,

Art. II, §204, effective in 12 months. (Emphasis supplied.)

We will address the question of liability of each insurer seriatim.

### Harleysville—Foster Parents' Insurer

Regarding Harleysville's liability, the issue arises as to whether minor plaintiff has qualified as an "insured" under the Harleysville policy issued to the Simonds. "Insured" is defined by section 103 of the act, 40 P.S. §1009.103, as well as the Harleysville policy as, inter alia:

"(B) a spouse or other relative of a named insured, *a minor in the custody of a named insured*, and a minor in the custody of a relative of a named insured if—(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and (ii) *in residence in the same household with a named insured.*" (Emphasis supplied.)

·Section 103 further provides that: "An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere."

At all relevant times minor plaintiff, Edward Baigis, was in residence in the same household as Harleysville's named insured, Valentine Simonds. The chief question then becomes whether minor plaintiff was, at the time of the accident, in the "custody" of Valentine Simonds, as that term is used in the act.

The facts before us indicate that the Child Welfare Department placed minor plaintiff as a foster child with Valentine Simonds on February 26,

1975. Thereafter, on March 10, 1975, Judge Rufe's order committed minor plaintiff to the custody of the Child Welfare Department for placement. This order terminated the natural father's right to custody. Thus, until the accident date, October 10, 1975, and in fact thereafter, minor plaintiff has lived as a foster child in the Simonds' household. Actual physical possession of the child was with Valentine Simonds at the time of the accident. Clearly, the Simonds were responsible for the myriad of daily decisions affecting the care of the child. Under the Juvenile Act, 42 Pa.C.S.A. §6302, "custodian" is defined as: "A person other than a parent or legal guardian, who stands in loco parentis to the child, or a person to whom legal custody of the child has been given by order of a court." We find that Mr. Simonds did stand in loco parentis to young Edward and minor plaintiff was in the *custody* of Harleysville's named insured, Valentine Simonds, at the time of the accident under both the Juvenile Act and the No-fault Act. Therefore we find that minor plaintiff was an "insured" under section 204(a)(2) of the No-fault Act.

If the legislature had intended that foster children should not be covered by the policies of their foster parents, the language providing coverage to a "minor in the custody of a named insured" would be superfluous. A natural or adopted child of a named insured is a "relative" of the named insured and thus is already provided coverage by the first clause of section 103(B). The inclusion of the second clause provides coverage through a foster parent's policy for minors who are not relatives in situations such as the one presently before the court. Thus, we find that Edward was a Harleysville "insured" under section 204(a)(2).

### Safeco—The County's Insurer

Regarding liability of Safeco to the minor plaintiff, the issue arises as to whether Edward Baigis was in the "custody" of the Bucks County Department of Child Welfare (hereinafter referred to as the agency) at the time of the accident. We find the definition of "custodian" in the Juvenile Act, supra, is equally applicable to the agency. Clearly Judge Rufe's order granted "legal custody" to the county. Moreover, the Superior Court's analysis of a court-designated foster parent's custodial rights in Stapleton v. Dauphin County Child Care Service, 228 Pa. Superior Ct. 371, 374, 324 A. 2d 562 (1974), leads us to conclude that while technical custody remained in the agency, actual custody was in the foster parents. The testimony of J. Russell Johnson, the agency representative were that while the normal parental care and affection was supplied by the foster parents, many of the day to day decisions were required to be made in consultation with an agency representative. We hold, therefore, that *both* types of custody qualify under section 103B of the No-fault Act and that both Harleysville and Safeco are liable.

### Nationwide—Mrs. Mowry's Insurer

The liability of Nationwide must be based if at all on the provisions of section 204(a)(4) of the No-fault Act. As we view that section, it can only be construed to be applicable to "an individual who is not an insured . . ." under one of the previous sections. We would hold, therefore, that if an injured person is covered as an insured under subsection (2), coverage is not available under subsection (4). Although comments by the court in Schimmelbusch v. Royal-Globe Insurance Co., 247 Pa.

Superior Ct. 28, 34, 371 A. 2d 1021 (1977), and in Hayes v. Erie Insurance Exchange, 261 Pa. Superior Ct. 171, 175, 395 A. 2d 1370, 1372 (1978), would indicate that pedestrians or bystanders would be within the normal coverage of section 204(a)(4), we conclude that said paragraph (4) would only apply to such persons who were not covered by one of the preceding paragraphs of the subsection. Therefore, we hold that Mrs. Mowry's insurer, Nationwide, is not liable.

### Claim for Attorneys' Fees under Section 107(3)

We received no evidence at the liability trial which would indicate that any of the three insurance carriers were acting "without reasonable foundation" in contesting the issue of liability herein. Accordingly, we make no order at this time with respect to liability for attorneys' fees. See Hayes, supra, 261 Pa. Superior Ct. at 177, 395 A. 2d at 1373.

### ORDER

Pursuant to Pa.R.C.P. 1038 on the question of liability, we hereby find in favor of plaintiffs and against defendants Harleysville Mutual Insurance Company and Safeco Insurance Company of America. We find in favor of defendant Nationwide Mutual Insurance Company.

In accordance with Pa.R.C.P. 1038(c), the prothonotary shall notify the attorneys for each of the parties of the date of filing of this decision.

Trial on the issue of damages shall be fixed pursuant to motion of one of the parties hereto.