### Haegele v. Pennsylvania General Insurance Company

*Paul D. Keenan,* for plaintiff.
*Earl H. Parsons,* for defendant.

GREENBERG, *J.,* April 2, 1981—Before us is petitioner Richard Haegele's motion for reconsideration of our order of September 26, 1980, granting outstanding interest payments on medical bills, but denying survivor's loss benefits, work loss benefits, and attorney's fees. During the interim period of September 26, 1980 and the present, an order and memorandum opinion were issued denying petitioner's motion for reconsideration. Thereafter, however, the court on January 19, 1981 entered an

order rescinding all previously issued orders, and withdrawing the memorandum opinion filed on December 31, 1980, pending reconsideration.

For reasons set forth in this opinion, the motion for reconsideration is granted and we award petitioner work loss benefits, interest and counsel fees.

## BACKGROUND

On or about July 27, 1978 petitioner's 16 year old daughter, Linda C. Haegele, died of injuries she sustained a day earlier in an automobile accident. At the time of the accident, petitioner, administrator of the estate of his daughter, was insured by respondent, Pennsylvania General Insurance Company (hereinafter respondent). The policy provided for no-fault insurance benefits to Linda C. Haegele as a member of the family and household of petitioner.

At the time of petitioner's filing his petition for no-fault benefits, respondent had made payments of $1,500 for funeral expenses and $100 for medical expenses. Subsequent thereto respondent reimbursed petitioner an additional amount of $1,836.40 for medical expenses.

In addition to the above, petitioner made additional requests for payments. He asserted entitlement to survivor's benefits, pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.202(d), work loss benefits, pursuant to 40 P.S. § 1009.103, .202, .205(b), and attorney's fees, pursuant to 40 P.S. § 1009.107(3). He also sought the payment of interest on all no-fault payments, that amount to be calculated from November 19, 1979, the date of petitioner's written demand to respondent: 40 P.S. § 1009.106(a)(2).

Petitioner, upon receiving the court's order of September 26, 1980, accepted the denial of his request for survivor's loss benefits (see Midboe v. State Farm Mutual Automobile Insurance Company, 8 D. & C. 3d 83 (1978), affirmed, per curiam, 261 Pa. Superior Ct. 447, 395 A. 2d 991 (1978)), but he filed his motion for reconsideration on the basis that the court erred in ruling that he is not entitled to work loss benefits. Petitioner cites Heffner v. Allstate Insurance Company, 265 Pa. Superior Ct. 181, 401 A. 2d 1160 (1979), in support of his position. He also takes exception to the denial of attorney's fees.

Respondent filed an answer to petitioner's petition asserting that petitioner is not entitled to survivor's benefits under the No-fault Act, 40 P.S. §1009.101 et seq., for the act requires dependency for the recovery of such benefits. Respondent also denied petitioner's claim of entitlement to work loss benefits and attorney's fees.

## DISCUSSION

In construing the meaning of a statute, the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. §§1501, 1921, mandates that legislative intent is controlling. The object of all statutory interpretation and construction is to ascertain and effectuate the legislature's intention, by giving unambiguous works their plain meaning. When the words of a statute are not explicit, intent is to be ascertained by considering, among other things, "the object to be attained."[1] Pa.C.S.A. §1921(c)(4). Furthermore, all Pennsylvania statutes are to be interpreted with the presumption in mind that the legislature intends to favor the public interest: 1 Pa.C.S.A. §1922(5).

The Pennsylvania No-fault Motor Vehicle Insurance Act (hereinafter the No-fault Act), 40 P.S. § 1009.101 et seq., in section 102(b), sets forth its purpose in a clear and concise manner: "[I]t is hereby declared to be the policy of the General Assembly to establish . . . a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims."

The legislature's intent being clear, and the "object to be attained" being explicitly set forth, the interpretation and construction of the act should be such that it effectuates that intent. Thus, when at all possible, public interest is to be favored, 1 Pa.C.S.A. § 1922(5), and victims, and survivors of deceased victims, of motor vehicle accidents are to be fairly and adequately compensated for their injuries.

The No-fault Act also sets forth definitions that are to be applied to various terms used in the act. See 40 P.S. § 1009.103. Therein, "survivor's loss" is defined, in pertinent part, as the "loss of income of a deceased victim which would probably have been contributed to a survivor or survivors. . . ." Clearly, in order to prove entitlement to the recovery of survivor's benefits, it is incumbent that one, such as a father, first prove dependency on the deceased victim, here, a daughter. Thus, such benefits are not properly awarded here where there is no proof of dependency. Petitioner accepts this interpretation.

The definition of "work loss," also set forth in 40 P.S. § 1009.103, provides, in pertinent part, "loss of gross income of a victim." The words of this definitional provision are clear. The absence of any mention of dependency, that is so clearly enunciated in the definition of "survivor's loss," must be construed as indicative of the legislative intent that

proof of dependency is not a prerequisite to the recovery of work loss benefits.

The Pennsylvania Supreme Court, in Allstate Ins. Co. v. Heffner, 491 Pa. 447, 421 A. 2d 629 (1980), acknowledged the possible overlapping coverage and double payments that might result when both work loss benefits and survivor's loss benefits are recoverable by the survivors of deceased victims. However, the possibility of such overlapping coverage does "not necessarily evidence a legislative intention to deny 'work loss' benefits to survivors." Heffner, supra, at p. 459.

The acknowledgement by the Supreme Court in Heffner, supra, that in some cases there is an overlapping of survivor's loss and work loss benefits, did not go so far as to indicate that the requirements for recovery overlap as well. Rather, at page 459, the court distinguishes these losses, characterizing work loss as a measure of survival act damage, on a no-fault basis. Quoting from Shrager, The Pennsylvania No-fault Motor Vehicle Insurance Act §1:11.4, the court stated at p.459:

"[T]he Act is simply providing a certain measure of Survival Act damage, on a no-fault basis. . . . Similarly, with respect to so much of survivor's loss recovery as represents contributions to survivors, this is simply no-fault wrongful death recovery."

The Pennsylvania Superior Court, in Daniels v. State Farm Mutual Automobile Insurance Company, April Term, 1979, No. 359 (opinion filed December 1, 1980), in determining whether a minor child should as a matter of law be considered dependent on his deceased father and thus entitled to survivor's loss benefits under the No-fault Act, and whether a claim for work loss benefits should be permitted under Heffner v. Allstate Insurance

Company, 265 Pa. Superior Ct. 181, 401 A. 2d 1160 (1979), characterized work loss benefits in the identical fashion. On page 8, the court states:

"In Heffner we did not redefine survivor's loss; we simply analyzed the distinctions between work loss and survivor's loss, noting that in the case of a deceased victim the work loss claim is comparable to a wrongful death action."

It is thus clear, from both Heffner, supra, and Daniels, supra, that work loss benefits represent the recovery of a victim's loss of gross income. This is true in cases where the victim survives the motor vehicle accident, and where the victim is deceased. In cases of the latter type, as under the Survival Act, there is a recovery of the victim's loss of gross income as if the victim were still alive. Dependency plays no role in the determination of entitlement to work loss benefits.

Having concluded that work loss benefits are recoverable under the presented circumstances, it is necessary to determine the allowable amount. The legislature, in 40 P.S. §1009.202, enumerates the four types of basic loss benefits, as well as each of the respective monetary limits. Subsection (b) provides for a total work loss limitation of $15,000.

Loss of gross income, or work loss, must be calculated pursuant to 40 P.S. §1009.205. To determine the applicable formula for the calculation of benefits, it is neccessary to classify the victim as "regularly employed," "seasonably employed" or "not employed." Then, it is necessary to establish the victim's "probable annual income," an amount always subject to proof that in any individual's case it should be higher or lower: Shrager, supra, at §1:9.1.

At the time of Linda C. Haegele's death, she had

been working part-time, about six hours a week, in her grandmother's bakery. She had worked from June 3, 1978 to July 22, 1978, a period during her summer vacation. Clearly, she was a "seasonably employed" person, a "high school student who is employed only in the summer." Shrager, supra, at. §1:9.2. However, the brevity of her work record is such that it is insufficient as a basis for establishing a means of forecasting future work loss. Linda C. Haegele established no known earnings history. Furthermore, although at the time of death she was a "seasonably employed" high school student, in the future she presumably would be entering the full-time labor force. Also, there was testimony concerning Linda's intention to procure a college education. This is proof that Linda Haegele's "probable annual income" is higher than her historic earnings record suggests.

In light of the above and the recognition that the formulae for "probable income" in 40 P.S. §1009.205 are not absolutely controlling, Linda Haegele is more appropriately identified as an "unemployed person," more particularly a victim who has not previously earned income from work. Accordingly, her probable annual income may be computed as: "(C) the average annual gross income of a production or non-supervisory worker in the private nonfarm economy . . . for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work."

As of December 31, 1977 the Insurance Department regulations, at 8 Pa. Bull. 1963 (1978), provided that the probable annual income for a production or non-supervisory worker in the private nonfarm economy of Pennsylvania was $213 multiplied by 52 weeks: Shrager, supra, at §1:9.3, fn. 71.

Thus applying theses figures, it becomes apparent that the probable annual income of one unemployed, such as decedent, would be approximately $11,000. Clearly then, in the case of a 16 year old girl, there can be no question that computed over her life-time, her entitlement to work loss benefits would exceed over the $15,000 maximum: 40 P.S. § 1009.202(b).

Petitioner contends that, pursuant to 40 P.S. § 1009.106(a)(2), he is entitled to interest at the rate of 18 percent per annum on all recoverable no-fault benefits. This court agrees.

The Supreme Court of Pennsylvania dealt with this same issue in the case of Hayes v. Erie Insurance Exchange, 261 Pa. Superior Ct. 171, 395 A. 2d 1370, rev'd 493 Pa. 150, 425 A. 2d 419 (1981). The court noted the clarity of the legislative intent expressed in 40 P.S. § 1009.106(a)(2) that section, "Payment of claims for no-fault benefits," providing in pertinent part "(a)(2) *No-fault benefits are overdue if not paid within thirty days* after the receipt by the obligor of each submission or reasonable proof of the fact and amount of loss sustained . . . .*Overdue payments bear interest at the rate of eighteen per cent (18%) per annum.* (Emphasis supplied.)

The above quoted section clearly and simply states that the consequences of an overdue payment is the additional charge of 18 percent interest on that amount. "There is no suggestion in § 106 that a late payment is any less overdue because the insurer denied the claim 'in good faith and with reasonable foundation.'" Hayes, supra, 493 Pa. 154, 425 A. 2d 421. Therefore, the Hayes court held that "where a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the 'good faith' of the insurer or the

'reasonable cause' of the delay." Hayes, supra, 493 Pa. 155, 425 A. 2d 421.

Thus, even in the absence of bad faith of respondent, petitioner is entitled to 18 percent interest per annum, on all recoverable no-fault benefits. That interest is to be calculated from November 19, 1979, the date on which petitioner's attorney made a written demand for all "maximum death benefits."

Petitioner's attorney also asserts an entitlement to attorney's fees, pursunt to 40 P.S. § 1009.107(3). That section provides:

"(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended." (Emphasis supplied.)

The forementioned provision clearly evidences the legislature's intention to allow the recovery of attorney's fees, in no-fault actions, only where there is a showing of the obligor's bad faith denial of a claim: Hayes, supra, 493 Pa. 154-55, 425 A. 2d 421. (The inclusion of this "bad faith/reasonable foundation" requirement in section 1009.107(3) highlights its absence from the earlier discussed section 1009.106(a)(2)).

This court agrees that petitioner's counsel is entitled to "reasonable" attorney fees. Petitioner's attorney asserts that following his November, 1979 written demand for death benefits, his attempts to correspond, and converse by telephone, with various representatives of respondent-company were ignored. It was not until June, 1980 that counsel for

respondent first discussed this matter with petitioner's attorney. Respondent's attorney does not dispute this characterization of the facts. Clearly, then, responent's prolonged silence, equivalent to a denial of petitioner's claim, satisfies the bad faith requirement of 40 P.S § 1009.107(3). Accordingly, petitioner's counsel is entitled to reasonable attorney's fees.

Petitioner's attorney has submitted a summary of the time expended on this case, intended as an aid to the court in determining the amount of attorney's fees recoverable. Respondent has taken issue with the submitted fee for services, asserting that the requested figure is inflated.

The hourly fees charged by the law firm representing petitioner, ranging from approximately $35 per hour to $65 per hour, are reasonable. However, the number of hours expended on the case are not. The hours spent are disproportionate to the issue and the amount involved and while they may be accurate, they cannot be considered reasonable, when petitioner is requesting that defendant foot the bill. We believe that a fair fee, under all the circumstances, is $2,000 which we award to petitioner.

## CONCLUSION

In light of the forementioned cases and argument, it is clear that petitioner is entitled to the recovery of work loss benefits. Additionally, he is entitled to 18 percent interest per annum, on all outstanding death benefits, calculated from November 19, 1979. Reasonable attorney's fees in the amount of $2,000 are also recoverable.

## ORDER

And now, April 2, 1981, upon consideration of petitioner's motion for reconsideration, and respondent's answer thereto, it is hereby ordered that respondent make the following payments within 30 days of the date of this order:

To the Estate of Linda C. Haegele:

Work loss benefits of $15,000, plus 18% interest per annum, calculated from November 19, 1979, until such sum is paid.

To Richard A. Haegele:

Interest of 18% per annum, on medical payments of $1,836.40, calculated from November 19, 1979 until the date of such medical payments, July 10, 1980.

To the law firm of Clark, Ladner, Fortenbaugh & Young, for attorney's fees and costs $2,000.

---

### In re: J.B.