## Lerch v. State Farm Mutual Insurance Company

*Donald F. Smith, Jr.,* for plaintiffs.
*Robert I. Cottom,* for defendant.

SAYLOR, *J.,* October 2, 1981—Before us are the preliminary objections of plaintiffs, the parents and administrators of the estate of decedent, 18 year old Holly L. Lerch, who died as a result of an automobile accident on December 20, 1978. Decedent was a passenger in her own car which was operated at the time by an unlicensed driver acting with decedent's permission. The accident involved a collision with another vehicle. Decedent was insured under a no-fault insurance policy issued by defendant, State Farm Automobile Insurance Company, in accordance with the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] The preliminary objections consist of a motion to strike and several objections in the nature of a demurrer to averments in defendant's amended new matter.

Plaintiffs' motion to strike defendant's amended new matter is premised upon defendant's unilateral action in obtaining leave of court to file the amended pleading. It is asserted that this unilateral action, without notice to or consent of the plaintiffs, is not in compliance with Pa.R.C.P. 1033. Plaintiffs request that the pleading, therefore, be stricken.

Rule 1033 provides that amendments to pleadings are authorized upon leave of court at "any time." The rule uses disjunctive language in providing a party an option to either obtain the "filed consent of the adverse party or by leave of court.

---

1. Act of July 19, 1974, P.L. 489, sec. 100 et seq., 40 P.S. §1009.101 et seq., hereafter referred to as the No-fault Act.

. . ." Pa.R.C.P 1033. It is true, as plaintiffs indicate, that the rule does not dictate how leave of court should be obtained. They suggest that in the absence of any local rule, the prior practice of petition and rule should be followed, citing, 2 Goodrich-Amram 2d §1033.1.

It is clear that amendments are within the trial court's discretion: Junk v. East End Fire Dept., 262 Pa. Superior Ct. 473, 396 A. 2d 1269 (1978). The well-accepted practice favors permitting amendments, especially at the pleading stage. Leave to amend should be granted "except where surprise or prejudice to the other party will result, or where the amendment is against a positive rule of law." Bogert v. Allentown Housing Authority, 426 Pa. 151, 158, 231 A. 2d 147, 150 (1967). Rule 1033 is to be liberally construed in order to attain a just determination of the controversy between the parties: Pa.R.C.P. 126; Gregg v. Gacon Construction Co., 249 Pa. Superior Ct. 377, 378, A. 2d 344 (1977). While entitlement to an amendment is not an absolute right, our courts are liberal in granting amendments in the absence of prejudice to the nonmoving party: Bata v. Central-Penn National Bank, 448 Pa. 355, 293 A. 2d 343, 356 (1972); Kilian v. Allegheny County Distributors, 409 Pa. 344, 185 A. 2d 517 (1962).

Plaintiffs have made no showing of prejudice other than that which would naturally flow from the allowance of the amendment. Plaintiffs claim that the petition and rule procedure would have allowed them the opportunity to object to the legitimacy of the content of defendant's amended new matter. As evidenced by their demurrer, plaintiffs have not lost their opportunity to so object. See, Gary v. Mankamyer, 485 Pa. 525, 530, 403

A. 2d 87, 90 (1979). We therefore, deny plaintiffs' motion to strike.[2]

In addressing plaintiffs' demurrer the critical issue is whether a decedent's estate is entitled to "work loss" benefits under the No-fault act even though the plaintiffs as administrators and distibutees are not "survivors" as defined in that act.

Plaintiffs have filed a claim with defendant insurance company for "work loss" benefits. Work loss is defined in the act as ". . . the loss of gross income of a victim."[3] State Farm has rejected the claim on the grounds that the claimants do not qualify as "survivors" as defined in the No-fault act. State Farm contends that only qualified "survivors" are entitled to such benefits as a matter of statutory construction and case law. A "survivor" is defined as a spouse or "child, parent, brother, sister or relative dependent upon the deceased for support."[4] It is clear that a "survivor" is entitled to recover "survivor's loss" benefits which are defined in pertinent part as the "loss of income of a deceased victim which would probably have been contributed to a survivor or survivors. . . . "[5] Mr. and Mrs. Lerch concede that they do not fall within the definition of "survivors" and they emphasize

---

2. We distinguish the instant case from Mackey v. Adamski, 286 Pa. Superior Ct. 456, 429 A. 2d 28, 33 (1981), where the Superior Court held it was reversible error to deny a similar motion to strike. In Mackey the defendant filed amended answers without leave of court or consent of opposing counsel. Id. at 34. In the case at bar defendant, we find, properly obtained leave of court.

3. 40 P.S. §1009.103.

4. 40 P.S. §1009.103.

5. 40 P.S. §1009.103.

that they are not voicing any·claim for "survivor's loss" benefits. Instead they assert that "work loss" is recoverable by the deceased victim through her estate as though she had been a surviving victim who was rendered unable to work. Plaintiffs bring this claim on behalf of their daughter's estate of which they are both administrators and distributees.

Plaintiffs rely upon our Supreme Court's opinion in the companion cases of Allstate Insurance Company v. Heffner and Pontius v. United States Fidelity and Guaranty Company, 491 Pa. 447, 421 A. 2d 629 (1980).[6] On its facts, Heffner held that a decedent's spouse was entitled to recovery of "work loss" under the No-fault act. In Pontius an administrator of decedent's estate was also permitted to recover "work loss." However, in that instance the administrator was also decedent's spouse, a qualified "survivor" under the act. The court studied the terms "victim" and "deceased victim" as defined in the act and determined that there was no distinction between these terms. Plaintiffs contend that this determination is tantamount to authorizing recovery of "work loss" by all victims. In the case of a deceased victim, they suggest, "work loss" recovery is a right extended to the victim's estate under the act, even in the absence of qualified survivors. It is argued that the court's numerous references to "survivors of deceased victims" are nothing more than broad stroke references to anyone who might take under a decedent's estate. They contend that the court's use of the term "survivors" was not limited to the definition provided in the act.

---

6. Affirming Heffner v. Allstate Insurance Company, 265 Superior Ct. 181, 401 A. 2d 1160 (1979).

Plaintiffs direct us to a number of trial court opinions to support this conslusion.[7]

In contrast, State Farm argues that the Heffner decision limited the recovery of "work loss" in the case of a deceased victim to the *survivors of the deceased victim* as defined by the act (e.g., spouse or dependent relative). Hence, in the instant case defendant contends that Mr. and Mrs. Lerch must show dependency upon deceased victim, their teenage daughter. In the absence of that showing plaintiffs are precluded from recovery of "work loss" under the No-fault Act. Defendant cites a number of trial court opinions supporting this position.[8]

The Pennsylvania No-fault Act was enacted for the stated purpose of establishing "at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims *and the survivors of deceased victims.*" (Emphasis supplied.)[9] We are cognizant that our Supreme Court in Heffner in-

---

7. Hartleb and White v. Ohio Casualty Insurance Company, 64 Erie 66 (1981); Haegele v. Pennsylvania General Insurance Company, No. 1745, 1980, (C.P. Philadelphia County filed April 2, 1981); Cillo v. Ohio Casualty Insurance Company, February term, C.P. Crawford County, No. 80-0542, (C.P. Lycoming County filed April 24, 1981); see also, Charney v. Robb, 14 D. & C. 3d 144 (1980).

8. Pontius v. United States Fidelity and Guaranty Company, No. 2702 S. 1977 (C.P. Dauphin County filed April 27, 1981); accord Nye v. Erie Insurance Exchange, 102 Dauphin 308, (1981), and Ohrin v. Erie Insurance Exchange, No. 3898 S. 1979 (C.P. Dauphin County filed April 30, 1981); Miller v. United States Fidelity and Guaranty Company, No. 1055, 1980 (C.P. Crawford County filed June 18, 1981).

9. 40 P.S. §1009.102(b).

terpreted the No-fault act with consistent and specific references to this purpose clause and its expressed concern *for the survivors of deceased victims:* Heffner, at 452-460, 421 A. 2d at 632, 634, 636. We are aware of the aim of this legislation to effectuate the "partial abolition of the tort system . . . for determining compensation . . . to individuals injured in motor vehicle accidents" in a low cost, comprehensive and fair manner: Heffner v. Allstate Insurance Company, 265 Pa. Superior Ct. 181, 189, 401 A. 2d 1160, 1163 (1979). We are unable to perceive in either the language of the Heffner opinion, or in the purposeful language of the act, the legislative intent to extend the benefits of no-fault recovery to every nondependent distributee of a decedent's estate, including charities, faithful employes, dear friends, social or fraternal organizations or a devoted girl or boyfriend: Miller, supra,____Crawford____, No. 1055, 1980 (1981) at 5. Our reading of Heffner indicates that the court merely rejected the insurance company's assertion that "work loss" was only recoverable by surviving victims, and not by survivors of deceased victims. This court is concerned that a contrary reading, mandating *no-fault recovery* of "work loss" for every deceased victim with income producing capacity, might defeat the goal of low cost insurance availability. We are also concerned lest we grant an unwarranted extension of the benefits of no-fault efficiency and economy far beyond those legislatively intended recipients, namely, the "victim and survivors of deceased victims."[10]

---

10. We note that Judge Morgan of the Dauphin County Common Pleas Court was impressed that had the Heffner court intended to use the term "survivors" to mean something other than the definition in the act, it would have so specified somewhere in its opinion: Pontius, supra, C.P. Dauphin County (slip opinion filed April 27, 1981) at 4.

In Heffner, the court appeared to accept the analogy between no-fault "work loss" recovery and work loss damages recoverable in a survival action. The plaintiffs use this analogy in further support of their claim on behalf of the decedent's estate. They cite the Superior Court's opinion in Daniels v. State Farm Mutual Automobile Insurance Co., 283 Pa. Superior Ct. 336, 423 A. 2d 1284 (1980), reiterating the application of the analogy.[11] In Heffner the analogy arises in the context of the possible overlapping of benefits under "work loss" and "survivor's loss." The opinion suggests that the analogy might be of assistance in properly characterizing the loss which is to be compensated: Heffner, supra, 421 A. 2d at 635. It is now clear that "work loss" and "survivor's loss" compensate different losses even though they may ultimately be awarded to the same claimant. We are not convinced, however, that the Supreme Court intended unlimited application of the analogy. Indeed, we perceive that the court intended to limit the application to the express purposes of the No-fault act. In this regard the court stated; in Heffner, at 460, 421 A. 2d at 636:

"As we view the Act, the decedent's contribution of income under survivor's loss recovery shall be excluded from the amount recovered under work loss. In this manner, both basic loss benefits will complement rather than duplicate each other."

This language surely limits the comparison. In survival and wrongful death actions those ele-

---

11. The Daniels court said at 343, 423 A. 2d at 1288: " . . . in Heffner we did not redefine survivor's loss; we simply analyzed the distinctions between work loss and survivor's loss, noting that in the case of a deceased victim the work loss claim is comparable to a survival action and the survivor's loss claim is comparable to a wrongful death action. . . . "

ments of damages that compare to "work loss" and "survivor's loss" are mutually exclusive; not complementary nor duplicative.[12] In a true survival action the existence of survivors is of no consequence. We are compelled, therefore, to conclude that the act must be read to provide work loss benefits to deceased victims through their estates, only to the extent that there exist qualified "survivors" as distributees of those estates. Under the act, only these survivors of deceased victims, for whom the legislature was expressly concerned, are extended the opportunity for a limited survival-type recovery on a no-fault basis.[13]

Finally, we are convinced that the estate of a deceased victim with no statutorily qualified survivors has a residual tort remedy through which to claim decedent's work loss. This residual remedy is preserved under section 301 of the No-fault Act.[14] See, Miller, supra, at 6-7; see also, McCullough v. Boswell, 29 Cumberland 64 (1979). Thus, although our decision precludes the non-dependent survivors of a deceased victim from recovery under the No-fault Act, their avenue of relief is preserved in a

---

12. See, Heffner v. Allstate, 265 Pa. Superior Ct. 181, 189, 401 A. 2d at 1164, where the Superior Court discussed the respective elements of survival and wrongful death damage actions.

13. We note the Supreme Court's concluding statement in Heffner at 460, 421, A. 2d at 636: " . . . The recovery of work loss benefits by survivors of deceased victims best fulfills the legislature's express intention to provide 'compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents' by providing 'adequate basic loss benefits [to] . . . the survivors of deceased victims.'"

14. 40 P.S. § 1009.301 (a)(4) providing: "A person remains liable for loss which is not compensated because of any limitation in accordance with section 202 (a), (b), (c), or (d) of this act. . . . "

survival action provided the requirements of the Survival Act[15] are met.[16]

The resolution of this issue makes it unnecesary to discuss issues raised by plaintiffs' remaining preliminary objections. When faced with a demurrer we must ask whether upon the facts averred, the law says with certainty that no recovery is permitted and where a doubt exists as to whether a demurrer should be sustained this doubt should be resolved in favor of overruling it: Gekas v. Shapp, 469 Pa. 1, 6, 364 A. 2d 691, 693 (1976). We have concluded that defendant, State Farm, has stated a legally sufficient defense and because of our reading of the No-fault Act it is clear that that defense was timely raised since under our decision plaintiffs were unable to provide reasonable proof of loss.[17] Therefore, plaintiffs' preliminary objections in the nature of a demurrer are overruled. Accordingly, we enter the following

## ORDER

October 2, 1981, upon consideration of plaintiffs' preliminary objections and the foregoing opinion, it is hereby ordered and decreed that said objections are overruled.

---

15. Act of April 28, 1978, P.L. 202, sec. 8(13), effective June 27, 1978, as amended, 20 Pa.C.S.A. §3371.

16. In such an action, representatives of a decedent's estate would be required to establish fault or some other actionable theory.

17. Plaintiffs had contended that defendant was barred by section 1009.106(a)(5) from raising defenses to the work loss claim more than 30 days after "the receipt of reasonable proof of the loss." Our interpretation of the act and Heffner negates this contention as it would be impossible for "non-qualified" survivors to provide such proof.