427 A.2d 651

ERIE INSURANCE EXCHANGE, Donald L. Tappan, and Borough of Camp Hill, Appellants,

v.

Kenneth P. FLEAGLE, Pauline Fleagle, West American Insurance Co., PMA Insurance Company, and L. B. Smith, Inc.

Superior Court of Pennsylvania.

Argued Dec. 6, 1979.

Filed Jan. 23, 1981.

Reargument Denied April 24, 1981.

Petition for Allowance of Appeal Denied June 30, 1981.

312

Clyde W. McIntyre, Harrisburg, for appellants.

Craig Stone, Harrisburg, for appellees.

Before PRICE, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants in this declaratory judgment action contend that the lower court erred in concluding that appellee Kenneth P. Fleagle was not a "victim" as defined by the Pennsylvania No-fault Motor Vehicle Insurance Act[1] and thus not entitled to basic loss benefits provided by that Act. Appellants additionally raise several related contentions involving the rights and liabilities of the parties. For the reasons which follow, we reverse the order of the court below.

The facts are not in dispute and may be summarized as follows. On June 17, 1976, appellee Kenneth P. Fleagle was

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq., 40 P.S. § 1009.101 et seq. (hereinafter cited as No-fault Act).

employed as a transmission mechanic by appellee L. B. Smith, Inc. On that day a patrol car driven by appellant Donald L. Tappan, a police officer employed by appellant Borough of Camp Hill, struck and injured Mr. Fleagle as he was crossing his employer's parking lot to retrieve a car which he intended to drive into the garage for service. Mr. Fleagle and his wife, appellee Pauline Fleagle, instituted a trespass action against Mr. Tappan and the Borough of Camp Hill to recover for personal injuries sustained in the accident. While that action was pending, appellants[2] brought this declaratory judgment action against the Fleagles, West American Insurance Company (the insurer of the Fleagles' personal automobile), Mr. Fleagle's employer, and PMA Insurance Company (the employer's workmen's compensation carrier, which had paid benefits for Mr. Fleagle's medical expenses and lost wages resulting from the accident). The lower court entered an order which provided, *inter alia*, that Mr. Fleagle was not entitled to basic loss benefits pursuant to the No-fault Act. Appellants then took this appeal.

Section 201 of the No-fault Act, 40 P.S. § 1009.201, provides in part: "If the accident resulting in injury occurs in this Commonwealth, any *victim* . . . is entitled to receive basic loss benefits in accordance with the provisions of this act." (Emphasis added). Section 103 of the No-fault Act, 40 P.S. § 1009.103, defines "victim" as "an individual who suffers injury arising out of the *maintenance or use of a motor vehicle* . . . ." (Emphasis added). Section 103 further states:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include:

(A) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises . . . .

---

**2.** Appellant Erie Insurance Exchange is the automobile liability insurer of Tappan and the Borough of Camp Hill.

Thus, Mr. Fleagle was not a "victim" under the No-fault Act if his injuries "ar[ose] out of . . . conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles . . . ."

In *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 420 A.2d 688 (1980) our Court stated:

> In construing the statutory definition of "victim," we begin by ascertaining the intent of the legislature. The purpose of the No-fault Act is "to establish at reasonable cost . . . a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims . . . ." 40 P.S. § 1009.102(b). [Citations omitted]. The Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., which provides that "[w]ords and phrases shall be construed . . . according to their common and approved usage," *id.* § 1903, also provides that statutes such as the No-fault Act "shall be liberally construed to effect their objects and to promote justice." *Id.* § 1928(c). However, "[w]hen the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). In *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979), our Court stated: "Historically, the courts of this Commonwealth have . . . found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature . . ., we should err in favor of coverage for the insured." *Id.*, 265 Pa.Super. at 187, 401 A.2d at 1162–63 (footnote omitted).

*Id.*, 278 at 572, 420 A.2d at 689.

■ Although appellants concede that at the time of the accident Mr. Fleagle's employer was in the "business of repairing, servicing, or otherwise maintaining motor vehicles" and that Mr. Fleagle was in the course of his employment, they argue that his injuries did not "aris[e] out of . . . conduct within the course of [the motor vehicle repair] business." We agree. The only connection between Mr. Fleagle's injuries and the repair business is the fact that the

accident occurred while he was present on the business premises. The accident did not occur while he was servicing an automobile; rather, it occurred when he was struck by a police car as he was walking on the parking lot. Accordingly, the accident was in no way associated with Mr. Fleagle's duties as a mechanic. Moreover, there is no indication whatsoever in the record that the police car was on the premises to be serviced. Thus, the connection between Mr. Fleagle's injuries and the repair business is tenuous at best. Under these circumstances, construing the statutory language to effect the purpose of the No-fault Act, we conclude that Mr. Fleagle's injuries did not "aris[e] out of . . . conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles . . . ." Consequently, Mr. Fleagle satisfies the No-fault Act definition of "victim" and thus is entitled to basic loss benefits.

■ Appellants next contend that basic loss benefits under the Act are payable by appellee West American Insurance Company. Section 204 of the No-fault Act, 40 P.S. § 1009.-204, establishes priorities for the payment of basic loss benefits. Section 204(a)(2) states: "The security for the payment of basic loss benefits applicable to an injury to . . . an insured is the security under which the victim . . . is insured . . . ." See Schimmelbusch v. Royal-Globe Insurance Co., 247 Pa.Super. 28, 32, 371 A.2d 1021, 1023 (1977) ("If a claimant carries insurance, subparagraph (2) directs that the claim must be presented to that insurer."). Accordingly, because West American Insurance Company is the insurer of the Fleagles' personal automobile, it is obligated to pay Mr. Fleagle's basic loss benefits.[3]

■ Appellants next contend that appellee PMA Insurance Company, the workmen's compensation carrier of Mr. Fleagle's employer does not have a right of subrogation to

---

**3.** Appellee West American Insurance Company argues that Mr. Fleagle is not "an insured" for purposes of section 204(a)(2) because its insurance policy contains a provision which excludes the payment of basic loss benefits where the injury "result[s] from the conduct of the business of repairing, servicing, or otherwise maintaining motor vehicles unless the accident occurred off the business premises . . . ."

any recovery by Mr. Fleagle from appellants Donald L. Tappan and Borough of Camp Hill for workmen's compensation benefits paid or payable to Mr. Fleagle. In *Brunelli v. Farelly Brothers*, 266 Pa.Super. 23, 402 A.2d 1058 (1979), an employee who was driving his employer's motor vehicle within the scope of his employment was injured in a collision with another motor vehicle. The employer's workmen's compensation carrier argued that it was subrogated to any recovery by the employee from the tortfeasors. Our Court held that under the No-fault Act "neither the employee-victim nor the workmen's compensation insurer, his would-be subrogee, has a cause of action against the third party tortfeasor for the sum paid or payable to the employee as workmen's compensation benefits." *Id.*, 266 Pa.Super. at 28, 402 A.2d at 1060–61. Accordingly, even if the Fleagles are successful in their tort action, the workmen's compensation carrier has no subrogation rights.

▅ Appellants contend last that the damages recoverable by the Fleagles in their tort action are limited to any economic losses in excess of basic loss benefits recoverable under the No-fault Act and non-economic losses as provided by the No-fault Act. We agree. Pursuant to section 301(a)(4) of the No-fault Act, 40 P.S. § 1009.301(a)(4), a tortfeasor is liable for economic losses to the extent they exceed basic loss benefits paid to the victim. *See Brunelli v. Farelly Brothers, supra* at 27, 402 A.2d at 1060. Additionally, a tortfeasor is liable for non-economic losses if any of the conditions stated in section 301(a)(5) of the No-fault Act, 40 P.S. § 1009.301(a)(5), is present.

To summarize, we hold that Mr. Fleagle is entitled to basic loss benefits under the No-fault Act; those benefits are payable by appellee West American Insurance Company; appellee PMA Insurance Company does not have any subrogation rights for workmen's compensation benefits paid or

This provision is identical to that contained in the standard form no-fault policy promulgated by the Pennsylvania Insurance Commission. *See* 31 Pa.Code § 66.2(A). Because we have concluded that Mr. Fleagle's injuries did not "aris[e] out of . . . conduct within the course of [the repair] business," *a fortiori* his injuries did not "result[ ] from the conduct of [the repair] business."

payable to Mr. Fleagle; and the damages recoverable by the Fleagles in their tort action against appellants Donald L. Tappan and Borough of Camp Hill are limited to any economic losses in excess of basic loss benefits recoverable under the No-fault Act and non-economic losses as provided by the No-fault Act.

Order reversed.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

I respectfully dissent and would affirm the order of the Court of Common Pleas of Cumberland County on the able opinion of President Judge Dale F. Shughart who, in pertinent part, said

The plaintiffs contend 1) that the No-fault Act applies to the accident because under the language of the act Fleagle was a "victim" 2) that Fleagle is entitled to basic no-fault benefits from *his* insurance company, West American, and is not precluded from such recovery by operation of an exclusion within the West American policy and 3) that PMA Insurance Co. as the workmen's compensation carrier has no right of subrogation against Erie Insurance Exchange. By answer the Fleagles request similar findings.

Defendant West American Insurance Co. contends 1) that the No-Fault Act does not apply to the accident because under the terms of the Act Fleagle was not a "victim" intended to be covered by the provisions of the Act and 2) that if no-fault applies Erie Insurance Exchange is on the risk as a result of an exclusion within the West American policy which exempts from coverage injury to a person resulting from the conduct of a business of servicing automobiles unless the injury occurs off the business premises. Defendants PMA Insurance Co. and L. B. Smith, Inc. did not file answers.

Briefs have been submitted; argument was heard, and the matter is ready for disposition. No cases dealing with the precise issue presented here have been submitted to us, and our research has not discovered a case on point.

Section 1921 of the Statutory Construction Act of 1972 of November 25, 1970, as amended, 1 Pa.C.S. § 1501 et seq. (pkt. part, 1978–1979), provides that the object of construction is to effectuate the intent of the legislature. The policy of the legislature regarding the No-fault Act is found within the Act:

> [p]urposes.—[t]herefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a State-wide system of prompt and adequate basic loss benefits for motor vehicle accident *victims* and the survivors of deceased victims.

40 P.S. § 1009.101(b) (emphasis added).

To be eligible for no-fault benefits Fleagle must be a "victim" of a motor vehicle accident. " 'Victim' means an individual who suffers injury arising out of the *maintenance or use* of a motor vehicle." 40 P.S. § 1009.103 (emphasis added). Crucial to establishing the identity of a victim under the Act is the definition of "maintenance or use of a motor vehicle" which means:

> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. *Maintenance or use of a motor vehicle does not include; (A) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises*;

40 P.S. § 1009.103 (emphasis added).

Notwithstanding the wording of the statute, the plaintiffs argue that "conduct" must be interpreted to mean conduct involved with the maintenance or use of the injuring vehicle. Through interpolation the plaintiffs contend that the statute should read "[m]aintenance or use of a motor vehicle does not include: (A) conduct [involving the maintenance or use of a motor vehicle] within the course of the business of repairing . . . ." The impact of such an interpolation would be that unless the injured party was actually working on a motor vehicle at the time

of the accident or there was direct conduct in relation to the injuring vehicle, the no-fault exclusion for business conduct would not apply. As support for their interpolation the plaintiffs argue that Fleagle was a pedestrian when he was hit and his presence on the parking lot was totally extraneous to the operation of the business.

Unless the language of a statute is unclear, the statute should be followed. 1 Pa.C.S. § 1921. While the No-fault Act is not a model of clarity, the business exclusion within the maintenance or use definition is clear. "Conduct with the course of a business of repairing or servicing a motor vehicle" applies to just such a situation as presented by the facts in the case at bar. Fleagle was crossing the parking lot of his employer to retrieve a vehicle to drive into the garage to work on it. His conduct was clearly furthering the business of L. B. Smith, Inc. of servicing automobiles. *Epler v. North American Rockwell Corp.*, 482 Pa. 391, 393 A.2d 1163 (1978); *Baker v. Oliver B. Cannon & Sons*, 26 Pa.Cmwlth. 143, 362 A.2d 1150 (1976). His conduct was within that contemplated by the business exclusion to no-fault application as enunciated in § 1009.-103 of the No-fault Act. Limiting Fleagle's conduct to times when he was physically working on a vehicle for purposes of applying the exclusion, as plaintiffs urge, would contradict the express language of the statute.

Tort liability has been partially abolished by the No-fault Act which provides in relevant part:

[p]artial abolition.—[t]ort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of *the maintenance or use of a motor vehicle*

. . . . .

40 P.S. § 1009.301(a) (emphasis added).

The partial abolition of tort liability and the six saving sections which follow the main statement in § 1009.301 do not apply to the instant case because the facts as here presented invoke the business exclusion in the definition of "maintenance or use of a motor vehicle". Because Fleagle does not fall within the definition of "victim", the

provisions of the No-fault Act are not applicable. He retains his right of action to recover on a theory of tort liability.

We are not unmindful of the fact that if Fleagle simply had been a pedestrian not within the employ of L. B. Smith, Inc. and not acting within the course of the business of repairing vehicles at the time of the accident, the result here would be different. The business exclusion to the maintenance or use definition is relevant in establishing whether a "victim" is entitled to no-fault benefits. It creates two classes of individual, those with tort remedies and those with no-fault remedies. *Singer v. Shephard,* 464 Pa. 387, 346 A.2d 897 (1975).

The right of subrogation of L. B. Smith, Inc. and so PMA Insurance Co. as the workmen's compensation carrier remains because the provisions of the No-fault Act are not controlling here. Section 671 of the Pennsylvania Workmen's Compensation Act of December 5, 1974, as amended, 77 Pa.C.S. § 1 et seq. (pkt. part, 1978–1979), provides for the right of subrogation.