451 A.2d 474

**William H. CRAWFORD, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1982.

Filed Oct. 1, 1982.

168

Robert J. Campbell, Beaver Falls, for appellant.

Daniel R. Gigler, Pittsburgh, for appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

HESTER, Judge:

Presently before the court is the appeal of William H. Crawford (hereinafter called Crawford) from the order of

the lower court dated April 10, 1981, wherein appellee Allstate Insurance Company's (hereinafter called Allstate) preliminary objection in the nature of demurrer to Crawford's complaint and first amended complaint was sustained and Crawford's complaint and first amended complaint dismissed with prejudice.

We reverse.

On December 4, 1980, Crawford filed an action in assumpsit against Allstate to recover no-fault benefits allegedly due pursuant to the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. Section 1009.101 et seq. On January 15, 1981, Allstate filed its demurrer alleging that Crawford failed to state a cause of action upon which relief could be granted under the No-Fault Act. On January 23, 1981, Crawford filed a first amended complaint. Argument on Allstate's demurrer was heard by the lower court on March 13, 1981 and by order dated April 10, 1981, the lower court sustained Allstate's demurrer and dismissed with prejudice Crawford's complaint and first amended complaint. It is from this April 10, 1981 order that the instant appeal has been brought.

The rather unique set of operative facts herein involved may briefly be summarized as follows: Allstate issued to Crawford an insurance policy which provided security to Crawford in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act. That policy (No. 0–28–223892) was in effect on June 20, 1979. At approximately 2:30 P.M. on that date, Crawford, while walking along railroad tracks near the Beaver River in Beaver County, Pennsylvania, was struck from the rear by a 1978 Chevrolet utility pick-up truck bearing Ohio license plate No. 5J615. The unusual aspect of this case is that at the time the Chevrolet pick-up truck struck Crawford, same was operating on railroad tracks, having been equipped with a special device which enabled it to so operate. Crawford alleges, however, that both prior and subsequent to the June 20, 1979 accident, the 1978 Chevrolet utility pick-up truck which struck him "was operated upon public highways *as well as*

upon railroad tracks." (Appellant's first amended complaint, § 6).

The lower court found that the utility pick-up truck involved, despite its potential for operation on rails by means of special equipment, generally must be considered a "motor vehicle" under the No-Fault Act. Contrary to this general finding, however, the lower court then concluded that the type or kind of accident which occurred and the resultant injuries sustained *fell outside* the coverage intended by the drafters of the No-Fault Act. The lower court based its conclusion upon the fact that *at the time of the accident,* the unit in question—the 1978 Chevrolet pick-up truck—was *not* being operated as a motor vehicle. Accordingly, the court sustained Allstate's demurrer and entered its April 10, 1981 order.

We disagree.

Initially, we are cognizant of the remedial spirit of the Pennsylvania No-Fault Act as set forth in both Article I (purposes and definitions) and Article II (right to benefits) of said Act.

§ 102. Findings and purposes.

(a) Findings.—The General Assembly hereby finds and declares that: ...

(3) the *maximum feasible restoration* of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce; (Emphasis added). 40 P.S. § 1009.102(a)(3).

§ 201. Right to basic loss benefits; limitation on benefits.

(a) Accident within this State.—If the *accident resulting in injury* occurs in this Commonwealth, any victim or any survivor of a deceased *victim is entitled* to receive basic loss benefits in accordance with the provision of this Act. (Emphasis added). 40 P.S. § 1009.201(a).

■ Moreover, we again reiterate our position that if the court is to err in ascertaining the intent of the Legislature in

close or doubtful cases, it should err *in favor* of coverage for the insured. *Dull v. Employer's Mutual Casualty Company,* 278 Pa.Super. 569, 420 A.2d 688 (1980); see also *Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 401 A.2d 1160 (1979).

Contained in the definitional section of the Act are the following:

"Motor vehicle" means a vehicle of a kind required to be registered under the act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code.[1]

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. . . .

"Victim" means an individual who suffers injury arising out of the maintenance or use of a motor vehicle; "deceased victim" means a victim suffering death resulting from injury. 40 P.S. § 1009.103.

A reading of the applicable provisions of the 1976 Vehicle Code demonstrates to us that the utility pick-up truck which struck Crawford on June 20, 1979, was of a kind required to be registered under the 1976 Vehicle Code, which, in its registration provision, provides:

"No vehicle shall be operating upon any highway in this Commonwealth until the vehicle is properly registered with the Department as provided in this chapter." 75 Pa.C.S. § 1302(a).

Thereafter, "Vehicle" is defined as a

". . . device in, upon or by which any person or property *is or may* be transported or drawn upon a highway, except devices used *exclusively* upon rails or tracks." (Emphasis added).

▪ For our present purpose of determining if the grant of Allstate's demurrer was proper, we accept as true all well-pleaded facts contained in Crawford's first amended

1. The 1959 *Vehicle Code* has been repealed and replaced in this Commonwealth by the Act of June 17, 1976 (P.L. 162 No. 81), also known as The Vehicle Code.

complaint; specifically, wherein at paragraph 6 it is alleged *that both before and after* the date of the accident, the 1978 Chevrolet pick-up truck had been operated upon public highways *as well as* upon railroad tracks. Accepting this allegation as true, it necessarily (and logically) follows that the unit which struck Crawford is a "vehicle" as defined in the 1976 Vehicle Code inasmuch as it was of a kind required to be registered thereunder. It is a transportation device not used exclusively upon rails or tracks which has often times been used upon the highway. Accordingly, the Chevrolet in question also falls within the definition of what constitutes a "motor vehicle" as defined in 40 P.S. § 1009.103 of the No-Fault Act.

■ Thereafter, it is our opinion that the lower court improperly restrictively interpreted the Act's phrase "maintenance or use of a motor vehicle" to include only the maintenance or use of motor vehicles *when used as vehicles on the highway.* Our analysis of the No-Fault Act does not support such an interpretation. We believe that if our Legislature had intended to limit No-Fault coverage to situations wherein a motor vehicle is being used as a vehicle upon the highways, it could and would have clearly so stated in Section 40 P.S. § 1009.103. Therefore, in the absence of such a limitational definition, we feel compelled to reverse the order of the lower court.

On numerous occasions, we have approved recovery of No-Fault benefits under the Act by an insured who was injured as a result of the "maintenance or use of a motor vehicle" wherein *at the time* of the accident, the motor vehicle was not being operated upon a highway. In *Erie Insurance Exchange v. Fleagle,* 285 Pa.Super. 310, 427 A.2d 651 (1981), no-fault benefits were approved for an auto mechanic who was injured by a motor vehicle being operated in his employer's *parking lot.*

Contrariwise, *Crusco v. Insurance Company of North America,* 292 Pa.Super. 293, 437 A.2d 52 (1981) must be distinguished with and is non-dispositive of the instant case. In *Crusco,* we denied No-Fault coverage to the Administratrix of a decedent's estate (in her fiduciary capacity) where-

in the decedent was killed when an explosion destroyed the motor home she was occupying. There, we held: "[T]he use of the refrigerator and stove in the preparation of a meal is not a use as a device of transportation" (*Crusco,* 292 Pa.Superior Ct. 298, 437 A.2d at p. 54).

Consistent therewith, we are of the opinion that the proper test in applying the "maintenance and use" concept to individual fact situations is whether the injury is causally related to the use of a motor vehicle. In the instant case, we feel that it is (while in *Crusco,* we determined that it was not).

For the foregoing reasons, we reverse the order of the lower court. Appellant's complaint and first amended complaint are hereby reinstated and appellee is granted twenty (20) days in which to file a responsive pleading thereto.

Order reversed.