## Bashore v. American Manufacturers Mutual Insurance Company

*Leroy Hyman*, for plaintiff.
*Jon S. Malsnee*, for defendant.

HESS, *S.J.*, December 22, 1982—Plaintiff, Donald G. Bashore, has instituted suit against defendant, American Manufacturers Mutual Insurance Company, seeking to recover damages allegedly owing to plaintiff under the provisions of an insurance policy purchased by him from defendant. The policy provides benefits under the so called "No-fault Motor Vehicle Insurance Law." Plaintiff contends that he is entitled to benefits to compensate him for expenses incurred and wages lost as a result of injuries sustained in an accident that occurred on August 4, 1978. Defendant argues that the policy does not cover the loss and that "No-fault" is inapplicable.

The parties have stipulated that the case be tried non-jury and counsel have filed an agreed statement of facts. The problem before us requires an interpretation of the facts and the application of the appropriate provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L.

489, 40 P.S. §1009.101 et seq. The stated purpose of the act §102.b is "to establish at *reasonable cost* to the purchaser of insurance, a statewide system of *prompt* and *adequate* basic loss benefits for motor accident victims and the survivor of deceased victims." (Emphasis supplied.) Insofar as "reasonable cost" is concerned the writer, being cognizant of the rapidly escalating cost of his own "No-fault" policy can give testimony to the failure of this portion of the legislative purpose. In regards to "prompt" payment of benefits, the history of the present litigation is mute evidence that "prompt" is a farce. In spite of the lapse of more than four years since the injuries were sustained plaintiff has received no benefits to compensate for his admittedly grave injuries, large medical bills and considerable loss of wages. He is involved in litigation including defendant insurance carrier and two other insurance companies to attempt to ascertain his rights amid a maze of legal controversy that appears to be benefiting only the members of the legal profession who are representing the various parties.

As we interpret the facts stipulated (Set I and Set II) plaintiff was building a home and purchased roof trusses from Rigidply Rafters, Inc. On August 4, 1978 Lamar H. Wise, an employee of Rigidply, delivered to plaiatiff at the site of the new home near Bernville, Berks County, Pa. approximately 39 roof trusses. Wise delivered the trusses in a tractor trailer truck owned by Rigidply and registered as a motor vehicle under the Vehicle Code at the time of the accident. The truck had a crane permanently bolted onto its frame in back of the cab and the trusses were laid on the trailer portion of the truck.

It was agreed that the trusses were to be transferred from the truck to the top of the walls of the

house. Wise accomplished this by attaching a chain from the crane around a truss located on the trailer, then returning to the truck portion and operating the controls for the crane so as to lift the truss and place it on the walls of the building. The controls were operable by Wise either while he was standing on the ground or on the sideboard of the truck. On the occasion when plaintiff was struck, Wise was operating from the sideboard of the truck. Every time a truss was transferrd from the truck the procedure was repeated.

Plaintiff was in a position where he could unhook the chain so that the arm of the crane could return to the truck to be attached to another truss. After several of them had been delivered as indicated, Wise, while attempting to place the crane in a position to lift another truss, moved a lever in the wrong direction, causing the crane arm to move toward plaintiff rather than away from him and hitting plaintiff on the right temple, producing the injuries in question. At the time of the accident the stabilizer on the side of the truck closest to the house was lowered onto the ground.

As a result of the accident plaintiff suffered serious injuries. Medical expenses incurred totaled $12,351.15 and loss of earnings totaled $16,264.80. Plaintiff seeks to be reimbursed under the "No-fault" policy he purchased from defendant to insure an automobile owned by him.

Plaintiff contends that he is a "victim"[1] who sustained injury as a result of the "use of a motor

---

1. Section 103 of the "No-fault" Act defines victim "as an individual who suffers injury arising out of the maintenance or use of a motor vehicle."

vehicle as a vehicle,"[2] and is entitled to receive basic loss benefits from defendant. Defendant replies that plaintiff is not entitled to recover basic loss benefits because the truck was not being used as a motor vehicle at the time of the accident, the stabilizer being lowered preventing the truck from moving, and the crane operation not being related to operation of a motor vehicle. It also contends that part of Section 103, not set forth in footnote (2), further limits "maintenance or use of a motor vehicle" so as not to include: "B. Conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it." Plaintiff argues that defendant is limited in its defense because of late rejection of the claim, and failure to set forth the defense it now relies upon. We will decide the issue upon the basic contentions and not consider the subordinate issues: Crusco v. Insurance Company of North America, 292 Pa. Super. 293, 437 A. 2d 52 (1981).

We have no difficulty in concluding that the truck owned by Rigidply is a motor vehicle as referred to in the act aforesaid and the Vehicle Code, Act of June 17, 1976, P.L. 162, 75 P.S. §102 which in Section 102 define vehicle as: "Every device in, upon or by which any person is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks." We have some difficulty in determining whether it was being used "as a vehicle" at the time of the accident.

---

2. Section 103 also defines the latter term, maintenance or use of a motor vehicle, as: "including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it."

Defendant cites authorities to support a contra position. In Crusco v. Insurance Company of North America, supra, the victim was in a motor home parked in a parking lot. When the gas oven located in the vehicle was lighted in preparation of dinner it exploded as a result of gas leaking from the line to the refrigerator in the motor home. The Superior Court held that the victim had not sustained injury arising out of the maintenance or use of the motor home as a vehicle and could not recover.

In Wagner v. Nationwide Insurance Company, 40 D. & C. 3d 525 (1980), the court in Northampton County came to a similar conclusion when the injuries to the victim were sustained in relation to a motor vehicle van equipped for service of food and drink and parked at the site of an auction. The injury occurred when the victim, who approached the van to purchase food, came into contact with a portion of the van that was wet as a result of rain. An electric line connected to the van from a nearby home and the wet surface of the van came into contact and when the victim placed his hand on the handle of the door, preparatory to entering the van, he suffered electric shock and injury. In negating recovery the court found plaintiff's injury was caused by electricity brought to the van so that the van could function as a food service unit preventing "use of the van as a vehicle for transportation." P. 528. See also Day v. State Farm, Pa. Super., 396 A. 2d 3 (1978) in relation to a somewhat similar problem pertaining to uninsured motorists.

The pronouncement in Crusco is weakened by the reasoning of the court in Crawford v. Allstate Insurance Company, Pa. Super., 451 A. 2d 474, opinion filed October 1, 1982 and apparently not

published at the time of trial of the present case.[3] The factual situation is unique and especially interesting since the lower court was reversed when it concluded that "No-fault" was inapplicable. Plaintiff was walking along railroad tracks in Beaver County, Pa. and was struck from the rear by a 1978 Chevrolet utility pick-up truck licensed as a motor vehicle in Ohio. The truck was equipped with a special device to operate on railroad tracks, but it was alleged that before and after the accident it operated on the public highways. The lower court, while concluding that the vehicle was a "motor vehicle" as defined in the act, held that it was not being operated as a motor vehicle at the time of the accident. The Superior Court reversed ruling Crusco to be not controlling, merely holding "'use of the refrigerator and stove in preparation of a meal is not a use as a device of transportation.'" P. 477.

The Superior Court went on to state, P. 477: "Consistent therewith, we are of the opinion that the proper test in applying the 'maintenance and use' concept to individual fact situations is whether the injury is causally related to the use of a motor vehicle. In the instant case, we feel that it is (while in Crusco, we determined that it was not)." This result was reached in spite of the definition of a vehicle in the Vehicle Code, 75 Pa.C.S.A.§102, excepting devices "used exclusively upon rails or tracks."

Accepting Crawford causes us to place less reliance on Crusco and other authorities upon which defendant depends. "Maintenance and use" must be determined on a case by case basis and we are

3. See Pennsylvania Edition, Atlantic Reporter for November 26, 1982, 451 A. 2d 474 (1982).

satisfied that in the instant case the tractor trailer was being maintained and used as a vehicle at the time Mr. Bashore was injured. The installation of the crane and its use while the vehicle was stationary does not limit our conclusion. Loading and unloading a vehicle is a necessary part of transportation of property and is directly related to the use of the vehicle. The crane is an appropriate part of such loading and unloading use.

Defendant, however, contends that notwithstanding our conclusion, plaintiff may not recover pursuant to "No-fault." We are satisfied that the employee of Rigidply was unloading the vehicle at the time of the injury to plaintiff. Pursuant to Section 103 of the act, supra.: "Maintenance and use of a motor vehicle does not include: "(B) Conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into or alighting from it." Defendant argues that the foregoing exception excludes plaintiff and contends that Wise was not "occupying, entering into, or alighting from . . ." the vehicle at the time Bashore was injured. It relies upon Dull v. Employers' Mutual Casualty Company, 278 Pa. Superior Ct. 569, 420 A. 2d 688 (1980) for support. In Dull, plaintiff was standing to the rear of his automobile and attempted to remove a boat from the roof of his car. He slipped because of the condition of the land, fell and sustained injury. He attempted to recover damages under his "No-fault" policy. No recovery was permitted, the Superior Court holding that plaintiff was not "occupying, entering into or alighting from," a vehicle as the terms are defined in Section 103, supra. In Dull, however, the court indicated uncertainty, P. 690, in deciding to support a strict or broad construction of the language "occupying, entering into or alighting from" a vehicle. A strict

construction adhering to the common meaning of the words was favored in Dull but the court recognized that other factual situations might require a different approach. Thus Dull as does Crawford apparently requires a case by case consideration, difficult and uncertain as that may be insofar as precedents are concerned.

With those principles in mind we are completely satisfied that when plaintiff was injured, Wise, the agent who caused the injury, was occupying the motor vehicle and that the exception noted under Section 103B does not apply. We have found that when operating the crane levers to control the crane at the time of the accident Wise was standing on the sideboard of the truck and are satisfied that in such capacity he was occupying the motor vehicle consistent with the principles enunciated in Dull and Crawford. We find that plaintiff is entitled to recover under the provision of his "No-fault" insurance policy with defendant.

Plaintiff requests the allowance of counsel fees pursuant to Section 107(3) of the "No-fault" act. It provides: "If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court *may* award the claimant's attorney a reasonable fee based upon actual time expended." (Emphasis supplied.) The right to an award of counsel fees is not absolute. We cannot find that defendant acted unreasonably. With the confusion, uncertainty and sometimes apparent contradictory conclusions we can understand why defendant chose to litigate. As we indicated at the beginning of our discussion "No-fault" insurance is not reasonable in cost and far from prompt in bringing about the prompt payment of loss benefits.

We cannot fault defendant but we do suggest to the General Assembly that it take appropriate action to amend or repeal "No-fault." Under the facts before us we will not allow plaintiff to recover attorney fees. In so deciding we are in accord with the trial court, Superior Court and Supreme Court in their conclusions in Hayes v. Erie Insurance Exchange, Pa., 425 A. 2d 419, 1981. See also Hartleb, Administratrix v. The Ohio Casualty Insurance Company, Pa. Super., 451 A. 2d 506 (1982).

The parties have stipulated that if plaintiff is allowed recovery the award should include medical bills of $12,351.15 and lost earnings of $16,264.80, less a 20 percent credit for income taxes[4] of $3,252.96 or $13,011.84. Total $25,362.99. Plaintiff also seeks to recover 18 percent per annum for overdue payments. Section 106(a)(2). We have difficulty in accepting the principle that allows interest on overdue payments at the exorbitant rate of 18 percent per annum. Justice would appear to dictate that the fact finder should have the right to decide whether ordinary interest of 18 percent should be allowed as is the case in relation to counsel fees but the Supreme Court has decreed otherwise: Hayes v. Erie Insurance Exchange, supra.

Counsel for plaintiff has calculated in Exhibit 6 the interest claimed from each alleged due date. Exhibit 6 was marked at the trial but was not offered in evidence or agreed to by defendant. Under the circumstances we could not accept the calculations but will leave the issue open to be resolved by the parties or further action by the trial judge if the issue cannot be resolved. In view of the fact that it is apparent that the 18 percent continues to run

---

4. See Section 206(b).

until the award is paid a calculation at this time would be meaningless.

## ORDER

And now, December 22, 1982, a verdict is entered in favor of plaintiff, Donald G. Bashore, and against defendant, American Manufacturers Mutual Insurance Company, in the sum of $25,362.99, together with interest as provided in Section 106(a)(2) of the "Pennsylvania No-fault Motor Vehicle Insurance Act."

