**Camp v. Herzog**

*George Stenhach, Walter Stenhach,* and *D. Bruce Cahilly,* for plaintiffs.

*Raymond Ginn,* for defendant Gary M. Herzog.

*W. Patrick Delaney,* for defendant Quaker State Oil Refining Corp.

FINK, *J.,* May 21, 1986 —

RE: Preliminary Objections of defendants' Herzog:

## I. Demurrer (No-fault Act)

Defendants demur on the basis that the complaint does not allege the monetary threshold in damages necessary to comply with the Pennsylvania No-fault Motor Vehicle Insurance Act. There is no question that on the date of the alleged incident the Pennsylvania No-fault Act was sputtering but, nonetheless, alive. The only question is whether or not it was applicable to the facts alleged in plaintiffs' complaint.

Plaintiffs basically alleged that plaintiff Judith Camp was an adult person and mother of plaintiffs Sean and Jennifer Camp, minor children. It is further alleged that the mother went into the Quaker State gas station for a car repair. The gas station was a two-bay garage physically attached to which was a waiting area with a door or passageway in-between. The mother and her two children went into the waiting area while her car was being worked on. The door between the bays and waiting room remained open and the ignition was on in the automobile being worked on in the two-bay garage for approximately 30 minutes. At the expiration of the 30-minute period, the minor Sean Camp fell to the

floor with seizures brought about by the inhalation of carbon monoxide. Both children inhaled the carbon monoxide and noxious fumes from the running vehicle in the two-bay garage for the 30-minute period and, as a result, both children suffered nausea, vomiting, headaches, anxiety, depression, etc. and will in the future endure like suffering. This is the essence of plaintiffs' complaint against the numerous defendants.

We do not find that the Pennsylvania No-fault Motor Vehicle Insurance Act contemplated such coverage. Although the motor of the vehicle was in operation, the vehicle itself was not in that it was not moving. Furthermore, the gravamen of the complaint in negligence is the failure of the owner and/or operator of the gasoline station to provide suitable ventilation and/or suitable waiting area for the business invitees of the premises.

Counsel for defense refers to two Superior Court cases which are most relevant and illuminating and which clearly support this court's determination as above set forth; the first is *Erie Insurance Exchange v. Fleagle*, 427 A.2d 651. In the *Fleagle* case, the issue was whether or not plaintiff was a "victim" within the meaning of the No-fault Act. In the *Fleagle* case, plaintiff was a mechanic who was crossing his employer's parking lot to retrieve a car which he intended to drive into the garage for service when he was struck and injured by a patrol car driven by a police officer employed by the borough. The court had no difficulty in finding that plaintiff was, in fact, covered by the No-fault Act and, therefore, reversed an adverse finding by the trial court. It pointed out that a "victim" is defined by the act as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." Maintenance or use, however, does not include conduct

within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises. In *Fleagle* defendant argued that because the employee was in the process of getting a car to take into the garage for repair and, in fact, was on his employer's premises, he came within the exception and, therefore, was not a "victim" within the meaning of the act. The Superior Court, speaking through the Honorable Judge Hoffman, had no difficulty in finding, however, that he was injured "only because he was there" and had no direct relationship to the fact that he was an employee or that he intended to go get a car to move into the garage for the purpose of repairing it.

The next case is *Monaghan v. Pa. Mfgrs. Ass'n. Ins. Co. v. Stanislawczyk*, 299 Pa. Super. 227, 447 A.2d 1037 (1982). In this case plaintiff took her motor vehicle to defendant station for inspection and repair. Defendant owner of the facility was working on another car while plaintiff was waiting in the garage. While the other car was being worked on, it moved forward and struck plaintiff. Under these facts the lower court found in favor of plaintiff but was properly reversed on appeal to the Superior Court and through the Honorable Judge Van der Voort found that the statutory exclusion applied, viz., that maintenance or use of a motor vehicle did not include "conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or . . . ."

Accordingly, it appears obvious to this court that the *Monaghan* case and the *Fleagle* case are definitely distinguishable and they can coexist very nicely; as a matter of fact, it appears that the two cases are "hand in glove" with each other. The gen-

eral principle is that each case is dependent upon its own peculiar set of facts in order to construe whether plaintiff is a victim within the meaning of the No-fault Act and whether or not the injury suffered "arose out of the maintenance or use of a motor vehicle."

It is obvious to this writer that the peculiar set of facts in the instant case, at minimum, come under the exception to the "maintenance or use" provision and that the injury resulted from conduct "within the course of a repairing, servicing, or otherwise maintaining a motor vehicle while the plaintiff was *on* the business premises." We, therefore, find that the No-fault Act does not apply to the factual situation as pled in plaintiffs' complaint and, thus, the demurrer in defendant's count I is refused.

II. Demurrer (Sister's Emotional Suffering from Witnessing her Brother's Injuries)

This issue requires setting forth a brief history of recovery from emotional stress. Originally in Pennsylvania emotional stress was not recoverable as damages in tort unless it was accompanied by a direct trauma or trespass to the person so suffering. In other words, if a plaintiff was a guest passenger in an automobile and suffered a broken arm, he could not only recover loss of wages and ordinarily pain and suffering, but the mental suffering he himself endured as a result of the injury he himself sustained. Then came *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) where the court held that a parent could recover damages for his or her emotional and mental anguish experienced while witnessing the death of that parent's child caused by the negligent conduct of defendant only if the parent was physically within the "zone of danger" at the time of the trauma to the child. Later, in the

case of *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), the Supreme Court of Pennsylvania expanded the rule to allow recovery for emotional stress experienced by a parent for the injury to the child even if the parent was not physically within the "zone of danger." In *Sinn*, the parent, in fact, actually witnessed the death of her child. The specific holding of *Sinn v. Burd* is where plaintiff/ mother is a bystander physically situate outside the zone of danger who witnessed the violent death of her small child, she could recover from emotional shock directly relating to that occurrence if it was determined to be "foreseeable" as a matter of law.

This court is of the belief that the demurrer in paragraph 2 of defendants' preliminary objections should be sustained only because there is nothing pled in the complaint which shows a peculiarly close relationship between siblings such that would allow recovery by the sister for emotional stress she suffered while observing her brother injured as a result of the alleged negligent action of the defendant even though she was physically within the "zone of danger" and was herself injured under the allegations of the complaint.

This is not to hold that it is our view of the current state of Pennsylvania law that only parents can recover for the emotional stress they suffer when watching their children victimized by the negligence of another. This court believes that upon proper pleading demonstrating a sufficient proximity or closeness between one person and another that any person could recover from the emotional shock when experiencing injury to another loved one. We believe that no specific pleading is necessary to further describe the proximity or closeness between parent and child when a parent sees a child killed or injured as a result of a negligent act;

this is because of the very nature of the parent/child relationship. Likewise, we would believe that if a child experienced seeing the death of a parent because of negligence that child could recover for emotional stress, assuming proof of causal connection. Whether or not a spouse could recover for emotional stress when seeing the other spouse injured or killed by negligence under Pennsylvania law *without additional pleading* is questionable. There is no question in my mind, however, that if, for instance, in a spouse or sibling case it were pled that there was an unusually close relationship between spouses or between siblings whereby viewer/plaintiff deeply loved and cared for the victim of the trauma, either as spouse or sibling, this pleading would be sufficient to avoid a subsequent demurrer.

We do not find such a pleading here exists and, therefore, we sustain plaintiff's demurrer.

III. Demurrer (To Plaintiffs' Complaint Counts 8 and 9, viz., Cause of Action for Mother for Loss of Services of Children)

To the extent that this is an attempt to obtain a monetary award for "loss of consortium" by parent concerning the child, the demurrer will be sustained. Loss of consortium in Pennsylvania is restricted only to spouses, and it originally was restricted only to loss by the husband for the consortium of the wife; however, under recent Pennsylvania law, either spouse can recover for loss of consortium as to the other. However, nowhere in Pennsylvania law can a mother recover for loss of consortium of a child.

It is axiomatic in common law up to the present time in Pennsylvania that a parent is entitled to re-

imbursement for loss of services or work loss of a child up until the child becomes sui juris. We note, however, that there is no specific allegation in plaintiffs' complaint as to specified services or value thereof and absent that, it is the belief of this court that the pleading is fatally defective. Therefore, the cause of action of the mother for the "loss of services, society and companionship" cannot be upheld, and the demurrer to paragraphs 8 and 9 is sustained.

IV. Motion to Strike or for More Specific Pleading

Certain sub-paragraphs under paragraph 15 of plaintiffs' complaint are the subject of this motion. We will treat them as presented:

"j. Failing to exercise due and reasonable care under the circumstances for the protection of plaintiffs" — motion refused;

"l. Failing to exercise proper skill, diligence, and care under the circumstances" — motion refused;

"m. Failing to promulgate and/or implement sufficient rules, regulations and policies to insure a safe waiting area for business invitees and/or patrons" — motion refused;

"n. Violating the laws and regulations of the federal government in this commonwealth" — motion sustained for more specific pleading;

"o. Carelessly and negligently performing their respective duties and obligations to the plaintiffs so as to cause the plaintiffs severe injuries" — motion sustained as to more specific pleading;

"q. Failure to recognize and exercise due and reasonable care and diligence in protecting minor children from the inherent harmful effects through inhalation of carbon monoxide and automobile emissions" — motion refused

"s. Negligence at law" — motion to strike sustained.

## V. Motion to Strike

This motion, again, raises the specter of the No-fault Act which is already ruled upon and, therefore, defendants' motion to strike is hereby refused.

## ORDER

And now, this May 21, 1986, pursuant to the within opinion, the following order is made as to the preliminary objections of defendants' Herzog:

I. Demurrer refused.

II. Demurrer sustained.

III. Demurrer sustained.

IV. j. Motion refused.

l. Motion refused.

m. Motion refused.

n. Motion sustained for more specific pleading.

o. Motion sustained as to more specific pleading.

q. Motion refused.

s. Motion sustained.

V. Motion refused.