566 A.2d 600

**Milton L. METZEL, Individually and Rae Jean Metzel, Individually and Milton L. Metzel and Rae Jean Metzel, Parents and Natural Guardians of Alicia Metzel, a Minor, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued March 8, 1989.

Filed Oct. 5, 1989.

Reargument Denied Dec. 6, 1989.

Petition for Allowance of Appeal Denied May 8, 1990.

Kenneth J. Sparler, York, for appellants.

George F. Douglas, Jr., Carlisle, for appellee.

Before WIEAND, McEWEN and OLSZEWSKI, JJ.

WIEAND, Judge:

The issue in this appeal is whether occupants of a Winnebago motor home are entitled to be paid benefits under the

Pennsylvania No-fault Motor Vehicle Insurance Act[1] for injuries sustained as a result of an explosion which occurred while the vehicle was being used for lodging purposes. The trial court held that no such benefits could be recovered and entered summary judgment in favor of the no-fault insurance carrier. We affirm.

On December 26, 1983, Milton and Rae Jean Metzel, together with their daughter, Alicia, left their home in York, Pennsylvania, for a winter vacation in Florida. They stopped and parked their Winnebago motor home that night in Santee, South Carolina. At or about 2:30 a.m. on the following morning, Milton Metzel was awakened by a pounding noise in the side of the motor home. When he reached to adjust the thermostat, an explosion occurred which blew out the sides of the motor home and caused burns to the three members of the Metzel family. The explosion, it was subsequently determined, had been caused by a malfunction of the regulator valve in the motor home's propane system.

The insurer of the Metzel vehicle was State Farm Mutual Automobile Insurance Company (State Farm), which had issued a policy in accordance with the Pennsylvania No-fault Act. State Farm denied liability for no-fault benefits, asserting that at the time of the explosion the Winnebago was being used as a place of lodging and not as a vehicle for purposes of transportation. When the Metzels filed suit to recover no-fault benefits, State Farm filed a motion for summary judgment. Thereafter, the Metzels also moved for summary judgment, and the parties entered a stipulation of the facts relevant to a decision of the case.

Summary judgment is appropriate where it is clear that there remain no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). In the instant case, the facts are not in dispute,

1. Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq., repealed by Pennsylvania Motor Vehicle Financial Responsibility Law of February 12, 1984, P.L. 26, No. 11 § 8(a), effective October 1, 1984.

and the only issue is whether, under the circumstances, appellants are entitled to recover no-fault benefits.

■ The purpose of the No-fault Insurance system was to provide "basic loss benefits for motor vehicle accident victims...." 40 P.S. § 1009.102(b). Section 1009.103 contained the following definitions:

"Victim" means an individual who suffers injury arising out of the maintenance or use of a motor vehicle; ...

"Maintenance and use of a motor vehicle" means maintenance or use of a motor vehicle *as a vehicle, including, incident to its maintenance or use as a vehicle, occupying*, entering into, or alighting from *it....*

(emphasis added). The test used in applying the "maintenance and use" requirement of the No-fault Act to individual fact situations is whether the injury suffered was causally related to the use of a motor vehicle as a vehicle. *Crawford v. Allstate Insurance Company*, 305 Pa.Super. 167, 173, 451 A.2d 474, 477 (1982). "[W]hile the causal connection need not rise to the level of proximate causation, for purposes of coverage under the No-fault Act there must be some connection, more than mere chance or happenstance, between the injuries sustained and the insured vehicle" while the vehicle was being used as a vehicle. *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 303, 452 A.2d 735, 737 (1982). See also: *Howe v. Harleysville Insurance Companies*, 313 Pa.Super. 65, 67, 459 A.2d 412, 413 (1983).

The facts of this case closely parallel those of *Crusco v. Insurance Company of North America*, 292 Pa.Super. 293, 437 A.2d 52 (1981). In that case, appellant's decedent was killed while she was occupying a motor home parked in a parking lot. Gas had been leaking from a faulty gas line connected to the refrigerator, and an explosion had occurred when the decedent attempted to light the stove to prepare dinner. In an action to recover benefits under the No-fault Act, the trial court entered summary judgment in favor of the insurer, and the insured appealed. The Superior Court affirmed, reasoning as follows:

[W]e agree with the conclusion reached by the New York Supreme Court, Appellate Division, which was faced with an almost identical situation in *Reisinger v. Allstate Insurance Company,* 58 A.D.2d 1028, 397 N.Y.S.2d [52] (1977). In *Reisinger,* the plaintiff had sought to recover under the No-fault Act for injuries suffered when the gas cook stove in the insured "mini motor home" exploded during the preparation of breakfast. As in this case, the motor home was parked at the time of the accident. Rejecting the claim, the New York court explained:

> The No-fault coverage required by the statute applies for use of the motor vehicle qua motor vehicle, not the use of equipment built into the vehicle to serve some other function." (citing inter alia, 12 Couch on Insurance 2d § 45:47) 58 A.D.2d at 1028, 397 N.Y.S.2d at 52, 53.

We would add that the construction of the statute urged upon us by appellant would require that we ignore the statute's mandate that the accident result from the use of the vehicle as a vehicle. Yet, in construing the language of a statute, the court must assume that the legislature intended that every word of the statute would have effect. See *Commonwealth v. Driscoll,* 485 Pa. 99 401 A.2d 312 (1979), *Lukus v. Westinghouse Electric Corporation,* 276 Pa.Super. 232, 419 A.2d 431 (1980). Furthermore, it is assumed that the legislature uses words in their standard, or accepted, sense. See *Commonwealth v. Ashford,* 263 Pa.Super. 100, 397 A.2d 420 (1979).

*Id.* 292 Pa.Super. at 297, 437 A.2d at 53–54 (emphasis in original).

■ In the instant case, appellants' motor home was being used for overnight lodging when the faulty propane regulator valve caused an explosion of the furnace which, at that time, was being used for heating purposes. It seems clear, therefore, that the motor home was not, at the time of the explosion, being used *as a vehicle* within the meaning of the No-fault Act. See also: *Quinn v. By–Pass Garage,*

*Inc.*, 333 Pa.Super. 412, 482 A.2d 634 (1984) (injuries suffered when insured fell from upper bunk of motor home while parked for overnight lodging did not arise from maintenance or use of vehicle as vehicle, and benefits were properly denied). Cf. *Schenk v. Ohio Casualty Insurance Group*, 346 Pa.Super. 42, 498 A.2d 1361 (1985) (child who cut leg on parked automobile was not entitled to no-fault benefits; injury did not result from use or maintenance of automobile as vehicle); *Burger v. State Farm Insurance Companies*, 30 D. & C. 3d 398 (1984) (child injured in refrigerated meat truck while mother was shopping for meat not entitled to no-fault insurance benefits; activity was not related to use of motor vehicle as vehicle).

We need not decide whether the decision in *Spisak v. Nationwide Mutual Insurance Company*, 329 Pa.Super. 483, 478 A.2d 891 (1984) is out of line with other decisions of the Superior Court, for it is, in any event, distinguishable. In *Spisak*, the bodies of plaintiff's decedent and his female companion were found in the decedent's car, which had been pulled off the highway and stopped while the motor had been left running. While engaged in "compromising activities," the occupants of the vehicle were overcome by carbon monoxide fumes from the automobile's exhaust system. The trial court entered summary judgment in favor of the insurer, concluding that the occupants were not using the automobile as a vehicle at the time they were overcome. A panel of the Superior Court reversed. It distinguished the decision in *Crusco* on its facts because in *Spisak* death had resulted directly from the "operation of the vehicle's engine while it was parked." In the instant case, as well as in *Crusco* and *Quinn*, the motor home had been removed from the highway, it had been parked in a stationary position with its engine shut off, and it was being used for living and/or sleeping purposes when the injury occurred. At the time of the explosion, therefore, appellants' motor home was not being occupied or used "as a vehicle" but as

living quarters.[2]  This fact is not altered merely because the defective propane valve regulated the supply of propane not only to the heater and various appliances but also to the auxiliary fuel tank which could be used when the vehicle was in operation.

Appellants' argument that they were charged a higher premium because coverage was being provided for a Winnebago and that, therefore, they could reasonably expect coverage for the type of accident occurring in this case is being made for the first time on appeal and is not supported by the record.  What is clear is that neither the Pennsylvania No-fault Law nor the policy issued by State Farm required the payment of no-fault benefits for an incident which occurred while the Winnebago was being used as a home and not as a vehicle.  We hold, therefore, that the trial court properly entered summary judgment in favor of the appellee-insurer.

Affirmed.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

After long reflection, I regret that I must respectfully disagree with my learned colleagues' conclusion that the facts of the instant case do not fall within the confines of the No-fault Act.  While the case relied upon by the majority, *Crusco v. Insurance Company of North America*, 292 Pa.Super. 293, 437 A.2d 52 (1981), is factually similar to the case *sub judice*, when applied to the facts herein, its analysis runs counter to the liberal interpretation our Courts have always used when determining whether coverage existed under the Act.  I must, therefore, respectfully dissent.

**2.**  Appellants' reliance on the decision in *Crawford v. Allstate Insurance Company,* 305 Pa.Super. 167, 451 A.2d 474 (1982) is misplaced.  The issue in that case pertained to the use as a vehicle of a pickup truck which had been equipped with a special device to permit its operation on railroad tracks.  The court held that it was being used as a vehicle when it collided with a pedestrian while being operated on railroad tracks.

In order for an insured to be entitled to no-fault benefits, the injury or death must be *causally related* to the use of a motor vehicle. *Crawford v. Allstate Insurance Company,* 305 Pa.Super. 167, 451 A.2d 474 (1982). Section 103 of the No-fault Act defines a "maintenance and use of a motor vehicle" as a "maintenance or use of a motor vehicle *as a vehicle* ..." (emphasis added). 40 P.S. § 1009.103. In discussing the intent of the legislature in drafting the No-fault Act, this Court in *Dull v. Employers Mutual Casualty Company,* 278 Pa.Super. 569, 420 A.2d 688 (1980) noted:

> The purpose of the No-fault Act is "to establish at reasonable cost ... a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims ..." 40 P.S. § 1009.102(b). See *Dubose v. McCoy,* 277 Pa.Super. 149, 419 A.2d 705 (1980); *Hayes v. Erie Insurance Exchange,* 261 Pa.Super. 171, 395 A.2d 1370 (1978); *Singer v. Sheppard,* 33 Pa.Cmwlth. 276, 381 A.2d 1007 (1978). The Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., which provides that "[w]ords and phrases shall be construed ... according to their common and approved usage," id. § 1903, also provides that statutes such as the No-fault act "shall be liberally construed to effect their objects and to promote justice." Id. § 1928(c) ... In *Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 401 A.2d 1160 (1979), our Court stated: "Historically, the courts of this Commonwealth have ... found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature ..., we should err in favor of coverage for the insured." Id. 265 Pa.Super. at 187, 401 A.2d at 1162–63 (footnote omitted).

Id., 278 Pa.Superior Ct. at 571–572, 420 A.2d at 689.

Typical of the kind of case in which a liberal approach is used in interpreting the provisions of the No-fault Act is *Spisak v. Nationwide Mutual Insurance Company,* 329 Pa.Super. 483, 478 A.2d 891 (1984). In *Spisak,* the plaintiff's decedent was killed when he and a female companion

engaged in "compromising activities" in the back of his vehicle which had been parked off the road. The engine had been running at the time and the occupants of the car were overcome by carbon monoxide poisoning due to a faulty exhaust system. In upholding an order awarding no-fault benefits, this Court distinguished the *Crusco* holding as involving a situation in which coverage was denied because the injury was caused by an instrumentality external to the vehicle itself. In *Spisak*, however, the Court determined that the harm arose directly from the carbon monoxide fumes emanating from the faulty exhaust system while the vehicle was parked and the engine running. Under those circumstances the Court was quick to find a causal connection between the death of the victim and the use of a vehicle as a vehicle.

Instantly, we are presented with a factual situation that is distinguishable from that presented in *Crusco*. Here, as in *Crusco*, we have an injury which occurred due to an explosion occasioned by a faulty propane system. Unlike *Crusco*, however, evidence appears on the record that the propane system in the present case could also be used to fuel the vehicle itself. While the trial court found this fact of no consequence, I find its reasoning to be tenuous at best.[1] Nor does the majority offer sufficient justification for so finding. Because I believe this to be a close case, I would conclude, as in *Spisak*, that the auxiliary use of the propane system to propel the motor home provides the causal connection between the injury and the use of the motor home as a vehicle. To hold otherwise, in my opinion, would be to strictly construe against insureds an Act that historically has been liberally interpreted in favor of them. This, I am not prepared to do.

Motor homes are recognized as being "vehicles" under the No-fault Act. *See* 40 P.S. § 1009.103; 75 Pa.C.S.A.

---

[1] The trial court reasoned that as the system was being used to heat the vehicle, much like one would use a furnace at home, the fact that the system could be used to propel the vehicle did not affect the outcome of their decision. This use, however, is arguably similar to that in *Spisak*.

§ 102; *Crusco, supra,* 292 Pa.Super. at 295, 437 A.2d at 53. Moreover, their intended purpose is clear—to provide transportation as well as temporary living quarters. Since the insurer is surely cognizant of this dual role, the proper way for it to have excluded coverage for an accident such as the one herein, would be to expressly state as such in the policy of insurance. Because this was not done, and because the appellants could not possibly be aware of the consequences of the accident in terms of their no-fault coverage, I would reverse the trial court's order granting summary judgment.